Ronald G. PETTITT

v.

Jonathan LIZOTTE.

Supreme Judicial Court of Maine.

Argued Nov. 4, 1982.

Decided Dec. 28, 1982.

Platz & Thompson, P.A., Paul S. Douglass (orally), Lewiston, for plaintiff.

Richardson, Tyler & Troubh, Wendell G. Large (orally), Portland, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.

CARTER, Justice.

### I.

In 1978, Ronald Pettitt filed a complaint on behalf of himself and his minor daughter, Dora,[1] seeking damages for Dora's injuries inflicted by the defendant's dog. The Pettitts sought recovery under common law negligence and 7 M.R.S.A. § 3651 (1982). After a trial in Superior Court (Androscoggin County), a jury returned a verdict for the defendant. We sustain the judgment.

On October 31, 1975, Dora Pettitt was staying at the home of Linda and Jonathan Lizotte, her aunt and uncle. When Dora attempted to pet the Lizottes' Saint Bernard,[2] which was chained to an overhead wire, the dog severely scratched her left cheek.

Ms. Lizotte took Dora to Central Maine Medical Center. A Lewiston surgeon treated Dora in the emergency room and saw her for a series of follow-up treatments. Subsequently, a Portland plastic surgeon performed a scar revision operation. He has recommended the performance of a second revision when Dora is fifteen or sixteen years old. Both doctors testified, however, that some scarring on Dora's cheek is permanent.

The Lizottes knew that their dog had scratched or bitten children twice before the incident involving Dora. The parents of these children had told the Lizottes that these occurrences were not the Lizottes' fault, however, because the children had been teasing the dog. Ms. Lizotte testified that she wanted to give the dog away because of these incidents but Mr. Lizotte refused to give up the dog. She stated that he believed that the dog was not "ugly" unless teased.

---

1. We note, simply as clarification, that Mr. Pettitt's action is allowed only under the common law theory of recovery. *Teel v. Colson*, 396 A.2d 529, 532 (Me.1979).

2. The attorneys stipulated to ownership of the dog.

There was conflicting testimony concerning whether Ms. Lizotte told Dora to stay away from the dog. Ms. Lizotte testified that she told Dora not to go near the dog. Ms. Lizotte's brother, Mr. Fitts, testified that he heard Ms. Lizotte tell Dora to stay away from the dog. Dora testified that no one told her that she could not go outside to see the dog.

The plaintiff challenges eighteen evidentiary, procedural, and substantive determinations by the trial justice as constituting reversible error. After a review of the record in light of each of these contentions, we conclude that the justice neither abused his discretion nor clearly erred in any of his rulings. We discuss only the two major issues raised on appeal.

## II.

Until the morning of trial, the plaintiff had no knowledge that Dale Fitts, the brother of Ms. Lizotte, had been present at the Lizotte home on the date of the incident. Further, the plaintiff had no notice that the defense intended to call Mr. Fitts as a witness. Mr. Fitts was not listed as a potential witness or as a person who had knowledge of the facts of the occurrence in the defendant's answers to interrogatories, the pretrial memorandum, the pretrial order, or the defendant's supplemental answer to one of the plaintiff's interrogatories. The defendant notified the plaintiff, on the morning of trial, that Mr. Fitts would testify. The plaintiff objected prior to the beginning of the trial to permitting Mr. Fitts to testify. The plaintiff renewed this objection when the defendant called Mr. Fitts as a witness. The plaintiff did not seek a continuance or a delay of trial in order to prepare to meet Mr. Fitts's testimony. The court overruled plaintiff's objection to the calling of Mr. Fitts as a witness and he was permitted to testify.

Essentially, Mr. Fitts's testimony corroborated Ms. Lizotte's testimony. He testified that he had been at the Lizotte home on the day of Dora's accident. He heard Ms. Lizotte tell Dora that she could go outside and that she must stay away from the dog.

Dora went outside and did stay away from the dog. Dora returned to the house and later asked if she could go outside again. Ms. Lizotte answered affirmatively and again told Dora to stay away from the dog. Mr. Fitts heard Dora respond to the first warning about the dog but not to the second warning. Plaintiff's counsel did not cross-examine Mr. Fitts.

The Maine Rules of Civil Procedure contemplate that "[a]t the very least any counsel whose preparation reveals substantial inaccuracies or incompleteness in his client's prior responses to discovery should promptly notify the discovering party of the correct information." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 26.18a at 445 (2d ed. 1970). Rule 26(e)(1)(A), M.R.Civ.P., requires a party to supplement responses to discovery requests addressed to the identity and location of persons having knowledge of discoverable matters. Rule 16(c)(6), M.R. Civ.P., requires a party to promptly furnish to opposing counsel the name and address of any witness who will be called at trial and who is not listed in the pretrial memorandum.

It is well established that parties to civil actions are entitled to pretrial disclosure of all non-privileged relevant information. 8 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2001 at 15 (1970). As we have recently noted: "[m]eaningful pretrial conferences and liberal discovery are two of the principal devices available to effectuate the purpose of the Maine Rules of Civil Procedure 'to secure the just, speedy and inexpensive determination of every action.'" *Reeves v. Travelers Insurance Companies,* 421 A.2d 47, 50 (Me.1980).

Conduct of counsel that frustrates these purposes should be appropriately penalized. *Reeves,* 421 A.2d at 50. For example, the sanctions for failure to reveal the identity of a witness, found after completion of discovery under Rule 26 or Rule 33, M.R.Civ.P., include the court's refusal to permit the party to call such a witness at trial. *Maine Civil Practice* §§ 26.18a at 446

& 33.9 at 514. Similarly, Rule 16(d) provides sanctions that may be imposed on a party who fails to comply with the requirements of Rule 16. The sanctions include the exclusion of evidence at trial. Under former Rule 16, we required a showing of prejudicial surprise before finding error in admitting evidence not previously furnished to opposing counsel. *Terrio v. Millinocket Community Hospital,* 379 A.2d 135, 138 (Me. 1977) (no prejudicial surprise shown resulting from admission of document); *Blais v. Davis,* 358 A.2d 552, 554 (Me.1976) (no violation of rule when defense counsel received medical report on first day of trial). Under new Rule 16, however, it is suggested that claims of prejudice should be "more readily entertained" because of opposing counsel's continuing duty to disclose. C. Harvey, R. McGuire & L. Wroth, *Maine Civil Practice,* § 16.3 at 155 (Supp.1981). The matter lies within the sound discretion of the trial court. *Phil Crowley Steel Corp. v. Macomber, Inc.,* 601 F.2d 342, 344 (8th Cir.1979) (determination of whether a party had a duty to supplement answers to discovery requests is within sound discretion of judge); *Corley v. BP Oil Corp.,* 402 A.2d 1258, 1261 (D.C.App.1979) (judge may impose sanctions for breach of this duty but is not required to do so). The imposition of sanctions depends on the circumstances of the case and an appellate court will not "lightly overrule" a trial justice's judgment. *Reeves,* 421 A.2d at 50; *see generally* Note, *Pretrial in Maine Under New Rule 16: Settlement, Sanctions, and Sayonara,* 34 Me.L. Rev. 111 (1982) (discussion of theory and effectiveness of pretrial procedure).

It is important to note that we deal here with an unintentional omission by counsel, as opposed to the failure to comply with court-ordered discovery, *Reeves,* 421 A.2d at 50, or the extended failure to comply with a pretrial order to produce a record, *Lerman v. Inhabitants of City of Portland,* 406 A.2d 903, 904 (Me.1979); or the failure to appear for trial. *Sheepscot Land Corp. v. Gregory,* 383 A.2d 16, 22–23 (Me.1978). The existence of actual *prejudice* resulting from counsel's omission thus takes on added significance in this case.

■■■ In an analogous situation, the trial justice may also exclude evidence of unquestioned relevance if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, M.R.Evid. Prejudice under this rule connotes more than damage to the opposing side: "[a] party's case is always damaged by evidence that the facts are contrary to his contention; but that cannot be ground for exclusion. What is meant here [under Rule 403] is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." *State v. Hurd,* 360 A.2d 525, 527 n. 5 (Me. 1976) (quoting McCormick, *Handbook on the Law of Evidence* 439 n. 31 (2d ed. E. Clearly ed. 1972). It is important to note that *unfair surprise* is not included in Rule 403 as a separate ground for exclusion.[3] A *continuance is the appropriate remedy* unless surprise *and* the other grounds listed in Rule 403 are present. R. Field & P. Murray, *Maine Evidence* § 403.1 at 59 (1976).

■■■ The plaintiff here made two general objections to permitting Mr. Fitts to testify based on the plaintiff's lack of notice. Although not specifically articulated, the plaintiff's position was that he was unfairly surprised by the appearance of witness Fitts at trial. The plaintiff made no motion for a continuance. Even absent such a request, the plaintiff would almost certainly have been granted a recess, on request, which would have provided the plaintiff with an evening to prepare for Mr. Fitts's testimony. The direct examination of Mr. Fitts was extremely short and concluded at 5:05 p.m. When plaintiff waived cross-examination, the evidence was closed and the court adjourned. No inconvenience would have occurred by adjourning at 5:00 p.m.,

---

3. Rule 403, M.R.Evid. provides:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

and hearing Mr. Fitts's testimony the following day if the plaintiff had so requested.

Mr. Fitts's testimony was admissible to show that Ms. Lizotte gave the warnings to Dora. The impact of his testimony was cumulative. By affirming Ms. Lizotte's testimony that she told Dora to stay away from the dog, he corroborated the damaging testimony already in evidence. The testimony was clearly prejudicial because it supported the assertion that the facts were not as the plaintiff had suggested. This testimony did not, however, prompt a verdict based on improper or emotional grounds. In the absence of a motion by the plaintiff for a continuance, we do not find that the trial justice abused his discretion in admitting this testimony. *Hurd*, 360 A.2d at 527–28.

■ We in no way condone counsel's unintentional failure to disclose the existence of Mr. Fitts to the plaintiff; "a trial is not a sporting event, and discovery is founded upon the policy that the search for truth should be aided." *Tiedman v. American Pigment Corp.*, 253 F.2d 803, 808 (4th Cir. 1958). That failure is not excused or reduced in its significance by the fact that it was unintentional. The court's discretionary refusal to impose a sanction because of it was not, however, erroneous in the context of the severity of the only sanction sought by the plaintiff and the fact that no unfair prejudice arose from the admission of Fitts's testimony. The pretrial rules intend, ultimately, a "just result of litigation." M.R.Civ.P. 16, Advisory Comm. Note, 413–417 A.2d LIX (Maine Reporter 1980). We are satisfied that such a result occurred in this case.

## III.

The plaintiff argues that the justice erred in his jury instructions concerning fault and the burden of proof under the plaintiff's statutory theory of recovery, 7 M.R.S.A. § 3651.[4] The essence of the plaintiff's argument is that comparative negligence principles apply to an action brought under the dog damage statute. Consequently, plaintiff argues, "fault" under the statute means something more than common law negligence; plaintiff asked for an instruction equating fault with "actual knowing provocation." The plaintiff further contends that the court should have placed the burden of proving the plaintiff's fault on the defendant, rather than requiring the plaintiff affirmatively to prove the absence of fault. Anything less, plaintiff suggests, resurrects the old theory of contributory negligence and deprives the plaintiff of the ameliorating effect of the comparative negligence statute. We do not agree.

■ It is established that "fault" as used in this present text of the statute, and its predecessors since 1903,[5] is the equiva-

---

4. The statute provides:

When a dog does damage to a person or his property, his owner or keeper, and the parent, guardian, master or mistress of any minor who owns such dog, forfeits to the person injured the amount of the damage done, provided the said damage was not occasioned through the fault of the person injured, to be recovered by a civil action.

5. The original statute, entitled "Mischievous Dogs," provided, in part:

That when any dog shall do any damage either to the person or the property of any person, the owner or keeper of any such dog, and also the parent, guardian, master or mistress of any minor or servant who shall own or keep any such dog, shall be liable to, and shall forfeit and pay to the person injured double the amount of the damage done by such dog, to be recovered by action of tres-

pass, before any Court proper to try the same.

P.L. 1821, c. 174.

An 1885 amendment provided recovery for "the amount of the damage done." P.L. 1885, c. 115 (R.S. 1903, c. 4 § 52). In 1903, the statute was amended to provide, in part:

Towns may pass by-laws, to regulate the going at large of dogs therein. When a dog does damage to a person or his property, his owner or keeper and also the parent, guardian, master, or mistress of any minor who owns or keeps such dog, forfeits to the person injured the amount of the damage done, *provided said damage was not occasioned through the fault of the person injured;* to be recovered by action of trespass.

P.L. 1903, c. 109, § 1 (emphasis added).

The present statute, see *supra* note 3, retains the caveat "provided the said damage was not occasioned through the fault of the person injured...." 7 M.R.S.A. § 3651 (1982).

lent of negligence or want of due care. The plaintiff has the burden of showing that the injury was not occasioned by his own fault. *Milliken v. Fenderson,* 110 Me. 306, 307, 86 A. 174, 175 (1913); *Garland v. Hewes,* 101 Me. 549, 551, 64 A. 914, 915 (1906). We have noted that

> [i]t was not necessary, however, that the statute should expressly impose upon the plaintiff the burden of proving that the injury was not occasioned by his own fault. That burden was necessarily implied in the obligation to prove that the act of the dog was the cause of the injury. If it was occasioned by his own fault, it was not, in a legal sense, caused by the act of the dog.

*Milliken,* 110 Me. at 307, 86 A. at 175. The negligence of the defendant is immaterial. *Teel v. Colson,* 396 A.2d 529, 532 (Me.1979); *Begin v. Bernard,* 160 Me. 233, 239, 202 A.2d 547, 550 (1964).

Under the common law remedy in "dog bite" cases, the plaintiff has the burden of showing that the defendant kept the dog after notice of the dog's injurious propensities. *Teel,* 396 A.2d at 532; *Begin,* 160 Me. at 238, 202 A.2d at 550; *Carroll v. Marcoux,* 98 Me. 259, 263–64, 56 A. 848, 849 (1903); *Hussey v. King,* 83 Me. 568, 572, 22 A. 476, 478 (1891). The fault or mere negligence of the plaintiff is not a defense; the plaintiff's willful provocation of the dog might be a defense. *Carroll,* 98 Me. at 267, 56 A. at 850; *Hussey,* 83 Me. at 576, 22 A. at 479. As under the statutory cause of action, the degree of the defendant's care is irrelevant once it is shown that he kept the dog after knowing of its dangerous propensities. *Teel,* 396 A.2d at 532; *Hussey,* 83 Me. at 572, 22 A. at 477.

■ A plaintiff seeking recovery for damages inflicted by a dog may, therefore, proceed under either or both the statutory and the common law theories. Depending on the plaintiff's choice of action, the varia-

bles in the required burden of proof are the plaintiff's proof of defendant's knowledge and the plaintiff's proof of the absence of his own fault. The defendant's fault is immaterial to a right of recovery regardless of which form of action the plaintiff chooses.

■ Considering this background, our difficulties with the plaintiff's argument are several. The Maine Legislature adopted a modified form of comparative negligence in 1965. The statute provides that a plaintiff may recover against a defendant provided that the plaintiff is found less than equally at fault than the defendant. 14 M.R.S.A. § 156 (1982). The Legislature enacted the comparative negligence statute one year after the last revision of the dog damage statute. We note at the outset that the Legislature has made no effort to reconcile the two statutes. *Teel,* 396 A.2d at 535. Clearly, some reconciliation is a necessary precondition to the application of the principles of comparative negligence to the liability equation under the dog damage statute. If, under section 3651, the fault of the defendant is immaterial to a recovery, there is no conduct of the defendant against which plaintiff's fault can be weighed comparatively.[6]

The fact that since 1821, the fault of the dog keeper has never been considered, under either the common law or statutory remedy, evidences a clear legislative and judicial determination that the fault of the dog keeper is irrelevant. In a case quite similar to the present case, in which the plaintiff asked this Court to expand the coverage of the dog damage statute, we concluded that "[w]e would be reluctant in the absence of the most compelling reasons to disregard the interpretation placed upon statutory phraseology in a number of cases spanning a period of many years. We note that the legislature has not seen fit to change the [statute]. . . ." *Begin,* 160 Me. at 239, 202 A.2d at 550.

---

**6.** The other possible comparison emerges in *Milliken v. Fenderson.* In discussing the burden of proof, we noted that the plaintiff must prove that *his conduct* did not cause the injury in order to prove that *the act of the dog* caused the injury. 110 Me. at 307, 86 A. at 175. We conclude, with certainty, that the Legislature *did not* intend a comparison of the plaintiff's conduct with that of the dog.

We find no compelling reasons to expand this statute to include the "ameliorating effect" of comparative negligence principles. Even if the plaintiff's fault precludes recovery under the statute, the plaintiff is not without a remedy. He may proceed under the common law theory if he can prove the dog keeper's knowledge of the dog's injurious propensities.[7] It is manifestly reasonable, based on our prior interpretations of both the statutory and common law requirements, that a plaintiff who can prove neither his own due care nor the keeper's knowledge of the dog's injurious propensities should not recover.

The entry is

Judgment affirmed.

All concurring.

---

7. We have twice rejected plaintiffs' arguments that this requirement is too arduous. *Teel,* 396 A.2d at 535; *Begin,* 160 Me. at 239, 202 A.2d at 550.