PER CURIAM.
 

 Robert D. Spickler, the controlling stockholder and principal officer of Maine Coast Properties, Inc. (“Properties, Inc.”), a real estate and business brokerage firm, appeals from the $10,000 judgment entered by the Superior Court (Cumberland County) against him, jointly and severally with his corporation, on the counterclaim of defendants Robert and Virginia Flynn. That counterclaim sought recovery of a deposit paid by the Flynns to Properties, Inc., to be held by it as trustee, in connection with their proposed purchase of a retail business. Spickler was added as a counterclaim defendant when during the trial he revealed that he had caused his corporation to disburse the $10,000 deposit to himself individually.
 
 [1]
 
 Properties, Inc. has not appealed, and therefore the adjudication adverse to it has become final. Spickler’s right to the deposit is no greater than that of his corporation, and that liability has now been finally determined in litigation that he controlled. Accordingly, there is no decision of this court that would afford Spickler any effective relief, and we dismiss the appeal as moot.
 

 On February 5, 1979, Properties, Inc. entered into a listing agreement with the Harbor Shop, Inc. (“Seller”) for the sale of the latter’s women’s apparel store in Portland. By that agreement Properties, Inc. was to receive a 10% broker’s commission on any sale of the business within a certain period. After negotiations, Seller on March 7, 1979, entered into a purchase and sales agreement with the Flynns by which the latter would buy Seller’s business for $200,000. Joined as a party to the purchase and sales agreement, which it drafted, Properties, Inc. was upon the sale to be paid by Seller a commission of 10% of the purchase price. The agreement also made the following provision for a $10,000 earnest money deposit to be paid to Properties, Inc. by the Flynns:
 

 2. Purchaser will make a deposit of ten thousand Dollars ($10,000.00
 
 **
 
 ) with Broker [Properties, Inc.], as Trustee, and such deposit shall be held by Trustee in escrow until the date of settlement and then applied to the purchase price or returned to Purchaser if the title to the property is not marketable.
 

 The Flynns paid the $10,000 deposit to Properties, Inc. on the agreed upon schedule.
 

 On June 29, 1979, Seller and the Flynns, without the presence or participation of the broker, and unbeknown to it until later, met and agreed in writing to rescind the agreement for the sale of the business. In December 1979 Properties, Inc. filed the present action against Seller and the Flynns, claiming that both had committed a breach of the March 7, 1979, contract with Properties, Inc., and seeking as damages the $20,000 broker’s commission it lost as a result. The answers of Seller and the Flynns made general denials, asserted various affirmative defenses, and counterclaimed against Properties, Inc. on several grounds. Specifically, the Flynns’ counterclaim sought the return of the $10,000 deposited by them with Properties, Inc.
 

 In the course of a jury-waived trial in the Superior Court on September
 
 *1356
 
 17-19, 1984, testimony revealed that the $10,000 deposit had been disbursed to Spiekler individually, rather than held by Properties, Inc. as “Trustee in escrow.” Upon motion of the Flynns, the Superior Court justice hearing the case ordered that Spiekler be added as a co-defendant with his corporation, Properties, Inc., for the purpose of the Flynns' counterclaim.
 
 [2]
 
 By his decision of October 24,1984, the Superi- or Court justice, without reaching defendants’ affirmative defense, held that Properties, Inc. was not entitled to recover a broker’s commission or to retain any part of the $10,000 deposit. The Superior Court on November 9, 1984, entered on Properties, Inc.’s complaint a final judgment in favor of all the defendants and entered on the Flynns’ counterclaim a final judgment against Properties, Inc. and Spiekler, jointly and severally, in the sum of $10,000. On November 30, 1984, the attorney who had represented both Properties, Inc. and Spiekler at trial, having been discharged by his clients, was permitted to withdraw. On December 5, 1984, Spiekler, acting
 
 pro se
 
 and identifying himself as “Plaintiff/Appellant,” appealed from the November 9 judgment. No notice of appeal has at any time been filed on behalf of Properties, Inc.
 
 [3]
 

 On his appeal, Spiekler asks us to vacate the $10,000 judgment entered by the Superior Court against him and to remand for a new trial. Established principles governing the judicial process lead us to reject Spickler’s appeal. The unappealed, adverse judgment against Properties, Inc. is, by the rule of collateral estoppel, equally binding on Spiekler individually. As a result, Spiekler would benefit not one iota from an entry vacating the judgment of the Superi- or Court and remanding for a new trial. On any retrial, the final judgment against Properties, Inc. would estop Spiekler from making any claim to the $10,000 deposit; thus, a new trial would get Spiekler nothing. As we stated in
 
 Graffam v. Wray,
 
 437 A.2d 627, 631 (Me.1981):
 

 [Wjhere a decision by our Court would not afford the appellant any effective relief, we will dismiss the appeal on the ground of mootness for purposes of judicial economy.
 

 See also Knowlton v. Rhodes,
 
 413 A.2d 546, 548 (Me.1980).
 

 It is clear beyond peradventure that
 
 only
 
 Properties, Inc., and not Spiekler in his individual capacity, had any claim for a broker’s commission in the attempted business sale to the Flynns. Seller in writing listed its business for sale by and through Properties, Inc., and not Spiekler. Properties, Inc., and not Spiekler, was the broker-party to the three-party purchase and sales agreement of March 7, 1979. It was Properties, Inc. alone that commenced an action in December 1979 to recover a broker’s commission. Not until the time of trial nearly five years later, when it became known that the corporate broker-trustee had disbursed the $10,000 deposit to Spiekler individually, did the Superior Court, at the Flynns’ behest, join Spiekler as a co-party with his corporation. There was and could be no suggestion that Spick-ler was joined so that he could assert a claim to the $20,000 sales commission; rather, he was joined as a counterclaim defendant from whom the Flynns sought to
 
 *1357
 
 recover the $10,000 deposit. His defense was the same as that of Properties, Inc.; namely that Properties, Inc. had earned a sales commission and rightfully retained the $10,000 deposit following the cancellation of the purchase and sales agreement. That same issue is at the heart of Spick-ler’s appeal to this court.
 
 [4]
 
 That very issue, however, has already been fully and finally litigated between the Flynns and Properties, Inc. in the proceedings in the Superior Court. The judgment against Properties, Inc. in the Superior Court became final when it took no appeal.
 
 See
 
 18 C. Wright, A. Miller & E. Cooper,
 
 Federal Practice and Procedure
 
 § 4433, at 305.& n. 2 (1981 & Supp.1985). Traditional principles of collateral estoppel now preclude Spickler from relitigating the claim of Properties, Inc. to the $10,000 deposit.
 
 See generally Hossler v. Barry,
 
 403 A.2d 762, 766-70 (Me.1979);
 
 Cianchette v. Verrier,
 
 155 Me. 74, 151 A.2d 502 (1959).
 

 Section 39 of
 
 Restatement (Second) of Judgments
 
 states the black-letter law applicable to this appeal:
 

 A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.
 

 See also
 
 18 C. Wright, A. Miller & E. Cooper,
 
 supra,
 
 § 4451.
 
 See S.H. Nevers Corp. v. Husky Hydraulics, Inc.,
 
 408 A.2d 676, 679 (Me.1979). The record demonstrates that Spickler, and he alone, controlled at all times the litigation between his closely held corporation and the Flynns. The attorney for Properties, Inc. in seeking leave of court to withdraw, under M.R. Civ.P. 89(a), filed an affidavit averring that Spickler had both hired his law firm to file Properties, Inc.’s complaint in December 1979 and discharged it in 1984 as counsel for Properties, Inc. after the Superior Court’s decision. Spickler controlled his corporation’s defense of the Flynns’ counterclaim, and thus is precluded from relit-igating the issue of Properties, Inc.’s obligations to return the $10,000 deposit.
 

 The fact that Spickler was, on the Flynns’ counterclaim, a co-defendant with his corporation does not distinguish this present situation from that presented by two separate actions pending simultaneously against a corporation and its stockholder who controls the course of both proceedings. If final judgment on a common issue is reached first in the suit against the corporation, the stockholder is estopped from relitigating that issue in the separate suit against him.
 
 See
 
 18 C. Wright, A. Miller & E. Cooper,
 
 supra,
 
 § 4404. There is nothing unfair in foreclosing Spickler from litigating further an issue that he fully litigated through to final judgment in a counterclaim suit against a corporation that he controlled.
 
 See Kreager v. General Electric Co.,
 
 497 F.2d 468, 472 (2d Cir.1974),
 
 cert. denied,
 
 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (president and sole stockholder of corporation bound by the corporation’s defeat in an action that he effectively controlled).
 

 The continuing trust responsibilities of Properties, Inc. to hold and account for the $10,000 deposit are established by the final judgment against that corporation. That final judgment binds not only the corporation, but also Spickler, who at all times controlled the corporation’s litigation
 
 *1358
 
 of that issue and who has no greater right to withhold the deposit than his corporation has. No ruling of this court on Spickler’s present appeal could result in his release from his obligation to return the $10,000 deposit. This appeal is thus moot.
 

 The brief filed in Spickler’s appeal by the appellees takes no note of the final and unappealed judgment outstanding against the primary obligor, Properties, Inc., and provides us with no help whatever on the issues of collateral estoppel and mootness that are determinative of this appeal. Accordingly, we deny appellees their costs.
 
 See
 
 M.R.Civ.P. 76(a).
 

 The entry is:
 

 Appeal dismissed.
 

 The parties shall bear their own costs on appeal.
 

 All concurring.
 

 [1]
 

 . Spickler plays three roles in the drama of this case. He received the $10,000 as an individual, and the Flynns in their counterclaim as amended sued Spickler in that individual capacity. He also was the sole agent for Properties, Inc. in the brokerage dealings that gave rise to this lawsuit. Additionally, he exerted complete and exclusive control over Properties, Inc. in its prosecution and defense of the present litigation.
 

 **
 

 Two Thousand herewith, and the Balance of Eight Thousand Dollars, to be made on or before April 7, 1979.
 

 [2]
 

 . Spiekler attacks the Superior Court’s action in permitting amendment of the pleadings to add him as a party. We review that action only for abuse of discretion,
 
 Paulette v. Herbert C. Haynes, Inc.,
 
 347 A.2d 596, 598 (Me.1975), and find none.
 

 Neither Spiekler nor Properties, Inc. ever moved to name Spiekler as a plaintiff individually in the corporation’s lawsuit for the $20,000 commission. Accordingly, Spiekler is á party in this case only as a co-defendant on the Flynns’ counterclaim. He thus appeals only from the $10,000 judgment entered against him.
 

 [3]
 

 . Spickler’s notice of appeal purported to appeal only for himself and not for his corporation. In any event, "a corporation may appear in court only through a licensed attorney.”
 
 Land Management, Inc. v. Department of Environmental Protection,
 
 368 A.2d 602, 603 (Me.1977).
 

 [4]
 

 . Spickler does not argue, nor could he successfully do so, that, by its disbursement to him, the $10,000 became his under some right independent of the corporation’s claim to that fund. “The principle that a person to whom trust property is transferred takes it subject to the trust if when he received the transfer he had notice of the trust is so well established that it is unnecessary to cite the numerous cases which so hold." IV A. Scott,
 
 The Law of Trusts
 
 § 288, at 2367 (3d ed. 1967);
 
 see also id.
 
 § 291.2;
 
 Restatement (Second) of Trusts
 
 § 288 (1959). Spickler well knew the circumstances under which the corporation held it, and therefore he individually can be charged by the Flynns with the same trust as Properties, Inc.