**Robert D. SPICKLER**

v.

**Robert M. YORK.**

Supreme Judicial Court of Maine.

Argued Oct. 6, 1989.
Decided Dec. 7, 1989.

Robert D. Spickler (orally), Phippsburg, for plaintiff.

Evan M. Hansen (orally), Jonathan S. Piper, Preti, Flaherty, Beliveau & Pachios, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, CLIFFORD and COLLINS, JJ.

PER CURIAM.

Plaintiff–Appellee Robert D. Spickler, the purchaser-developer in a substantial land transaction, brought an action against Defendant–Appellant Robert M. York, an attorney, contending that York committed malpractice by negligently failing to reduce to writing certain terms of the real estate purchase agreement. Spickler alleges that York's malpractice caused Spickler to lose a 300 acre parcel of land in a previous law suit and to suffer substantial financial loss. The Superior Court (Cumberland County, *McKinley, J.*) entered judgment on a jury verdict for Spickler on the issue of liability. The interlocutory judgment was reported to this Court on York's motion. We vacate the judgment of the Superior Court.

I.

On November 6 and 7, 1973, Plaintiff–Appellee Robert D. Spickler and Dr. Charles Pettengill purchased Parkers Head Neck, a 300 acre peninsula on the lower Kennebec River in Phippsburg, from Roger Dube, with the intent to subdivide the property. Although the issue is in dispute, the jury found that Defendant–Appellant Rob-

ert M. York represented both Spickler and Pettengill at the closing of the real estate transaction. At that time Roger Dube was the sole owner of R.D. Realty Corp., a corporation whose only asset was Parkers Head Neck. Rather than purchase the property directly, Spickler, Pettengill, and Dube decided that Spickler and Pettengill would purchase all of the stock of R.D. Realty. As consideration, Dube received $30,000 at the closing, and R.D. Realty executed four notes prepared by York, totaling $270,000, secured by four separate mortgages on the property.

All parties were aware at the time of closing that R.D. Realty did not possess clear title to Parkers Head Neck. York "composed" a personal guarantee, dated November 7, 1973, executed at the closing, by which Dube "agreed to guarantee and warrant title to the property described in said mortgages, [to] bring an action to clear title as soon as possible to the premises described in said mortgages and further [agreed] not to assign his [right] in said mortgages and notes until clear title had been determined by the proper courts."

Spickler alleges that York failed to memorialize an oral agreement with Dube that mortgage payments owed to Dube by R.D. Realty would not become due until the quiet title actions were completed. This act of omission is the alleged malpractice in this suit. Spickler asserts that he did not know of York's failure to commit the agreement to writing until November, 1976.

Dube's actions to quiet title were not completed until May, 1976. Between the date of closing and 1976, Spickler engaged in litigation with the Department of Environmental Protection to obtain the right to subdivide the property, and eventually began subdivision work. A dispute arose between Spickler and Dube concerning when installment payments were due on the Dube held notes, and in March, 1976, Dube declared R.D. Realty to be in default and sought to foreclose on the property. Soon thereafter Spickler attempted to sell subdivision lots to several buyers, but Dube refused to release the mortgages. Spickler

bought out Pettengill's share of R.D. Realty and became sole owner in April, 1976.

In August, 1976, in an action brought before the case on appeal here, R.D. Realty sued Dube for fraud, breach of warranty of title, breach of contract, and breach of an agreement to pay Spickler's brokerage commission ("the *Dube* action"). Dube counterclaimed, seeking a declaratory judgment that the mortgage notes executed by R.D. Realty were in default and that Dube was entitled to a re-conveyance of the property. The Superior Court entered judgment on a jury verdict against Spickler on all counts except the brokerage commissions. On appeal, we affirmed the Superior Court's judgment.

Meanwhile, Spickler brought this suit, *pro se*, against York in November, 1979. Spickler alleges that York, as Spickler's attorney in the Parkers Head Neck transaction, was negligent because he failed to memorialize the oral agreement by which Dube would postpone the time at which mortgage payments would become due until all quiet title actions were completed. Specifically, Spickler claims that York's negligence caused him to lose the *Dube* action and to lose Parkers Head Neck to Dube. The Superior Court bifurcated the trial. The first half of the trial was held from April 6 to April 15, 1988, solely on the issue of liability. After a six day jury trial, the Superior Court entered judgment on a jury verdict for Spickler on the issue of liability. On York's motion, that interlocutory judgment was reported pursuant to M.R.Civ.P. 72. Although York now alleges over a dozen counts of error, we address only three of his claims here.

II.

The first issue we address is whether the Superior Court committed reversible error by ordering, on the third day of trial, that Spickler would be given until the sixth day of trial to designate an expert witness whose testimony would address the standard of professional care that York should have exercised during the Parkers Head Neck closing. Originally, on April 1, 1985, the Superior Court ordered Spickler to des-

ignate any expert witnesses by June 30, 1985. Spickler failed to do so. Later, on August 29, 1986, the Superior Court issued a pretrial scheduling order providing for the expedited completion of discovery by October 1, 1986, and requiring the early designation of expert witnesses. Spickler did not designate any expert witnesses at this point either. When trial began on April 4, 1988, Spickler still had not designated any expert witnesses.

At trial, York moved for a directed verdict on the ground that, in the absence of expert testimony, Spickler could not establish the standard of care that York should have applied when handling the Parkers Head Neck transaction. Therefore, York argued, Spickler could not prove his legal malpractice claim. Although the Superior Court agreed that expert testimony would be necessary for Spickler to meet his burden of proof, the court denied York's motion. On the third day of trial, over York's objection, the Superior Court gave Spickler until the sixth day of trial to designate a liability expert and to provide information on the content of his testimony. Spickler designated an expert, Dwayne Fitzgerald, on the fourth day of trial.

In the brief time that remained before the end of the trial, York made efforts to obtain an expert to rebut Fitzgerald's testimony. He was unsuccessful. The Superior Court instructed the jury to draw no inferences from York's failure to present the testimony of a liability expert of his own. On appeal, York argues that the Superior Court abused its discretion and severely prejudiced York by permitting Spickler to call a last minute expert witness. He argues that the Superior Court should have excluded Fitzgerald's testimony as a sanction for Spickler's failure to designate an expert within the time ordered by the court.[1]

Although the determination of admissibility of testimony, including the testimony of an expert witness, falls within the discretion of the trial justice, we will overturn the trial justice's determination for a clear abuse of that discretion. *See Hodgdon v. Jones,* 538 A.2d 281, 282 (Me.1988). Similarly, although we will not "lightly overrule" a trial justice's decision not to impose a sanction that excludes the testimony of a surprise witness, *Pettitt v. Lizotte,* 454 A.2d 329, 332 (Me.1982) (citing *Reeves v. Travelers Insurance Cos.,* 421 A.2d 47, 50 (Me.1980)), we will not permit the decision to stand where an abuse of discretion results. *See Reeves,* 421 A.2d at 50. Here, the Superior Court abused its discretion by failing to exclude Fitzgerald's testimony.

Spickler failed to comply with the Superior Court's pretrial orders to designate expert witnesses. M.R.Civ.P. 16(h) provides in pertinent part:

> (h) Sanctions. If a party fails to comply with the requirements of this rule or any order made hereunder, the court *shall* impose upon the party or the party's attorney, or both, such sanctions as the circumstances warrant, which may include ... the exclusion of evidence at the trial....

(Emphasis added). We have stressed in the past the importance of compelling compliance with discovery and pretrial orders. In *Butler v. Poulin,* 500 A.2d 257 (Me.1985), we stated, "[c]onduct of counsel or his clients that frustrates the beneficent purposes ... of discovery orders must be appropriately penalized." *Id.,* at 259 (citing *Reeves,* 421 A.2d at 50). In *Reeves,* we stated, "[i]t is the purpose of both the discovery rules and the pretrial conference to eliminate the sporting theory of justice, ... and to enforce full disclosure." *Reeves,* 421 A.2d at 50 (citing *Tiedman v. American Pigment Corp.,* 253 F.2d 803, 808 (4th Cir.1958)). Spickler has no reasonable justification for his repeated failures to designate an expert as ordered by the Superior Court. In these circumstances, the Superior Court's failure to impose an appropriate sanction compromised the integrity of the trial procedures. The Superior Court should have sanctioned Spickler for his failure to comply with the court's

---

1. The granting of a continuance is the usual remedy for the unfair surprise that results from the introduction of previously undiscovered evidence or an undesignated witness.

pretrial orders by excluding Dwayne Fitzgerald's expert testimony.

■■■ Additionally, the probative value of Fitzgerald's expert testimony was substantially outweighed by the unfair prejudice that resulted from the surprise admission of his testimony. M.R.Evid. 403. In *Pettitt*, we acknowledged that "unfair surprise" was not listed as a separate ground for exclusion of evidence under rule 403. *Id.* 454 A.2d at 332. However, in *Pettitt* we chose not to reverse the trial court's decision to admit the testimony of a surprise witness because no prejudice arose from the testimony, which was merely cumulative. Here, by contrast, the admission of Fitzgerald's surprise testimony resulted in severe prejudice. York was unable to rebut Fitzgerald's expert testimony on the issue of the professional duty of care that York should have exercised during the Parkers Head Neck transaction with the testimony of his own, independent expert. Additionally, the jury was left with the impression that, during the nine years before trial, York was unable to find a single attorney who was willing to advance his position. Because Spickler's malpractice cause of action by its nature casts York's legal expertise into doubt, the fact that York had been an attorney and was able to testify from his own experience what the applicable standard of care should have been does not begin to mitigate the prejudice that he suffered from the Superior Court's admission of Fitzgerald's testimony. We do not believe that the Superior Court's jury instruction to disregard the fact that York did not have his own expert witness compensated for the prejudice that resulted from the absence of such a witness' testimony. Where admission of the testimony of a surprise witness would result in unjustifiable prejudice, a trial court's failure to exclude that testimony amounts to an abuse of discretion.

### III.

Mid-trial, after Spickler had completed his case-in-chief, the Superior Court granted Spickler's motion to intervene, pursuant to M.R.Civ.P. 24(a), as a shareholder for R.D. Realty and treated his shareholder's derivative complaint as an amendment to his original complaint that added a new count, pursuant to M.R.Civ.P. 15(a). York argues that the Superior Court should have denied Spickler's motions to intervene and to amend his complaint because the motions were made too late and the court's grant of the motions prejudiced York severely. We agree that the derivative complaint was added too late.

■■■ Where the trial court permitted an amendment to the pleadings to add a party, this Court will only review this action to determine whether the trial court abused its discretion. *Spickler v. Flynn*, 494 A.2d 1369, 1372 n. 2 (Me.1985); *Poulette v. Herbert C. Haynes, Inc.*, 347 A.2d 596, 598 (Me.1975). Unless undue prejudice results, both Rule 15(a) and 24(a) contemplate lenient timing with regard to when motions need to be made and when they may be granted. *See* 1 R. Field, V. McKusick & K. Wroth, *Maine Civil Practice* §§ 15.4 & 24.1 (1970).

■■■ Nevertheless, where a motion to amend is accompanied by unjustifiable delay that results in prejudice to an opposing party, granting the motion is an abuse of discretion. *See Evans v. Syracuse City School Dist.*, 704 F.2d 44, 46 (2nd Cir.1983); *Cornell & Co. v. OSHRC*, 573 F.2d 820, 824–26 (3rd Cir.1978). There is no question that Spickler could have moved to intervene or amend his pleadings at any point during the nine years since the filing of this suit. His failure to so move constitutes unjustifiable delay. By granting Spickler's motions on the third day of trial, the Superior Court left York no opportunity to prepare a defense against the derivative claim. Further, two witnesses, Dr. Charles Pettengill and Freeman Linscott, both of whom played substantial parts in the original purchase of the Parkers Head Neck property, had testified at trial before the Superior Court added Spickler's derivative claim. Neither witness was available for cross-examination with regard to the claim presented by R.D. Realty after the court added the corporation's claim. York was prejudiced by this inability to cross-ex-

amine these two crucial witnesses. *Cf. Cornell,* 573 F.2d at 824–25. Therefore, we hold that the Superior Court abused its discretion by granting Spickler's motion to intervene as a shareholder for R.D. Realty on the third day of trial.

 Additionally, we note that it is only proper to bring a suit for a corporation through a licensed attorney. *See Land Management, Inc. v. Department of Environmental Protection,* 368 A.2d 602, 603 (Me.1977); *Spickler v. Flynn,* 494 A.2d 1369, 1372 n. 3 (Me.1985). In a shareholder's derivative suit, the wrong complained of is to the corporation, and the shareholder is merely a nominal plaintiff. *Ross v. Bernhard,* 396 U.S. 531, 538–39, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Forbes v. Wells Beach Casino, Inc.,* 307 A.2d 210, 222 (Me. 1973). Under Maine law, a corporation, which is a fictitious legal person, cannot bring an action unless it is represented by a licensed attorney. 4 M.R.S.A. §§ 807, 811; *Land Management,* 368 A.2d at 603. Because a shareholder in a derivative action asserts the substantive rights of the corporation rather than his own personal claims, and a corporation may not appear except through an attorney, it follows logically that the shareholder cannot bring the derivative suit in the absence of an attorney. Other jurisdictions have adopted this rule. *See Phillips v. Tobin,* 548 F.2d 408, 411–15 (2d Cir.1976); 19 Am.Jur.2d *Corporations* § 2361 (citations omitted).

### IV.

 York requested the Superior Court to instruct the jury that they were to determine whether, but for York's failure to memorialize certain agreements, Spickler "would" have prevailed in the *Dube* action. At trial, the Superior Court instructed the jury as follows:

> On this proximate cause issue, under the laws of the State of Maine, that burden more specifically is for the Plaintiff to satisfy by a fair preponderance of the evidence that, had the negligence of the Defendant not been committed, that the result in the Dube trial *could* have been

different. That specifically is the burden on the proximate cause issue.

Record at 1285 (emphasis added). York properly maintained his objection to the use of the word "could." York contends that the Superior Court's use of the word "could" in the context of a jury instruction "inadvertently, but seriously, diluted the 'more likely than not' burden of proof imposed on malpractice plaintiffs and permitted the jury to render judgment based on a 'mere possibility' standard." We agree.

Through its use of the word "could," the Superior Court failed to indicate to the jury that more than a mere possibility that York's negligence, if any, might have caused Spickler's loss of the *Dube* action is necessary to establish that York's conduct was the proximate cause of Spickler's loss. This was error. In a malpractice action, as in any other action based upon negligence, a negligent act, i.e., a violation of the duty to use the appropriate level of care towards another, is a *legal cause* of harm to such other person if "the actor's conduct is a *substantial factor* in bringing about the harm." *Wing v. Morse,* 300 A.2d 491, 495–96 (Me.1973). Accordingly, the Superior Court in this case should have instructed the jury members that in order to determine whether York's negligence, if any, was the legal cause of the harm that Spickler suffered, they needed to determine whether York's conduct was a substantial factor in bringing about the loss of the *Dube* action.

The entry is:

Judgment vacated. Remanded with direction to dismiss without prejudice shareholder derivative complaint and for further proceedings not inconsistent with the opinion herein.

All concurring.