2004 ME 80

**MAINE FARMS VENISON, INC.**

v.

**PEERLESS INSURANCE CO.**

Supreme Judicial Court of Maine.

Argued: Nov. 5, 2003.
Decided: June 24, 2004.

Thomas J. Connolly, Esq. (orally), Portland, for plaintiff.

Thomas S. Majerison, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Peerless Insurance Co. appeals from the judgment entered in the Superior Court (Lincoln County, *Warren, J.*), following a jury trial, awarding Maine Farms Venison, Inc. damages for the death of deer owned by Maine Farms and insured by Peerless. Maine Farms's suit alleges, and the jury found, that the deer were killed by lightning, a covered loss under its insurance policy issued by Peerless.

Maine Farms cross-appeals from the court's (1) entry of a summary judgment in favor of Peerless on its claims of fraud and negligent misrepresentation; (2) entry of judgment as a matter of law in favor of Peerless on its claim of unfair claims practices; and (3) orders limiting its damages, and reducing the damages through remittitur. We conclude that, contrary to the contentions of Peerless, the evidence is sufficient to support the jury's determination that the deer were killed by lightning and thus, the deaths were covered under Maine Farms's insurance policy. We agree with Peerless, however, that Maine Farms presented sufficient evidence only as to its contract claim, and that Maine Farms failed to prove that it was entitled to damages over and above the contract damages. Therefore, we vacate the judgment and remand to the Superior Court for entry of a judgment in favor of Maine Farms in the amount of $38,500.

## I.  BACKGROUND

[¶ 2] Maine Farms operates a farm in the Town of Jefferson, on which it raises deer to sell as deer meat. Following Hurricane Floyd, and what Maine Farms asserts to have been a lightning storm on September 16–17, 1999, Maine Farms discovered that many of its deer had died.

[¶ 3] Frank Waltz, Maine Farms's sole employee, testified that on September 17, he discovered that a large number of deer were dead and that he contacted the Cheney Insurance Agency, Peerless's agent, to tell it of the death of the deer. Brenda Hilton, a Cheney representative, told him to not touch anything.

[¶ 4] Waltz then contacted veterinarians in an attempt to have an autopsy conducted of the deer to determine the cause of death. He was unable to find a veterinarian who would do an autopsy. One of the veterinarians, Dr. Pierce, recommended that Waltz burn or bury the deer because the deer posed a public health threat. Waltz decided to bury the deer based on Dr. Pierce's advice.

[¶ 5] John Hilton, another representative of the Cheney Agency, arrived at the farm during the late afternoon of September 17. Waltz told Hilton of his intent to bury the deer. Hilton did not tell Waltz to bury the deer, nor did he tell him not to bury the deer. Hilton did tell Waltz that he should freeze one of the deer in order to preserve it for inspection. Waltz buried the deer on September 18, but did not set aside a deer to freeze. He was unable to locate a freezer in which to place the deer, although he did not contact butchers, veterinarians, or others who may have been able to freeze a deer. He did not know how many dead deer there were, and only began to count them as he buried them.

[¶ 6] Sometime after the incident, James Maxmin, the owner of Maine Farms, received a letter from Peerless stating that Peerless intended to investigate the claim to determine the cause of the loss. Peerless had some of the deer exhumed on September 23, but because of the delay, meaningful forensic analysis, except toxicology, was not possible.

[¶ 7] Maine Farms filed a claim with Peerless, through Cheney, for the loss of eighty-four deer on September 16 and 17. Waltz did not include fawns in the number of deer he claimed to have lost, and listed lightning, a cause of loss covered under the policy, as the cause of death on the insurance claim form. Peerless disputed Maine Farms's claim.

[¶ 8] Maine Farms commenced this lawsuit against Peerless in January of 2001. In its complaint, Maine Farms alleged breach of contract, unfair claims practices, fraud, negligent misrepresentation, defamation, and intentional interference with advantageous economic relations. Only the breach of contract and unfair claims

practices counts survived pretrial motions and went to trial.

[¶ 9] At trial, the court, pursuant to M.R. Civ. P. 50(a), entered judgment in favor of Peerless on Maine Farms's claim for unfair claims practices. At the conclusion of the trial, the jury returned a verdict in favor of Maine Farms, finding that lightning killed 154 of Maine Farms's deer and that Maine Farms sustained damages in the amount of $255,433. Pursuant to M.R. Civ. P. 59, Peerless moved for a new trial, and the court issued an order granting Peerless a new trial unless Maine Farms agreed to remit damages in excess of $107,220. *See* M.R. Civ. P. 59(a). Maine Farms accepted the remittitur. Peerless then filed this appeal and Maine Farms cross-appealed.

## II. LIABILITY

### A. Lightning as the Cause of Death of the Deer

■ [¶ 10] Peerless presented substantial evidence at trial indicating that lightning was not the cause of the death of the deer, and contends that the evidence presented by Maine Farms failed to establish that lightning was the cause of death of its deer. Peerless introduced the testimony of several experts, in electrical engineering, in lightning detection, in meteorology, and in veterinary science, to support its contention that lightning was not the cause of the death of Maine Farms's deer. Nathaniel Johnson conducted an investigation that included visiting the scene, and testified that lightning did not cause magnetization or treeing[1] of the utility pole guide wire near Maine Farms. He testified that magnetization is expected regardless of the presence of lightning and that what was characterized as treeing was really the effects of environmental exposure of the guide wire. Johnson also testified that if lightning had struck the utility pole near Maine Farms, it would have affected only the deer within ten feet of the pole.

[¶ 11] Dr. Richard Orville, an expert in lightning detection, testified that the Lightning Detection Network did not detect lightning on the night in question, that the Network has an 80–90% detection rate, and that he was unaware of any occasion when the Network failed to detect a lightning storm. Additionally, there was evidence that Global Atmospherics, Inc., a company that specializes in lightning location, detection, and advance warning equipment, did not detect lightning on the date in question. Paul Cousins, a meteorologist, testified that he reviewed meteorological data and concluded that no thunderstorms occurred in the vicinity of Maine Farms on September 16 or 17.

[¶ 12] Peerless also called a veterinarian, Dr. Thomas Judd, who conducted the autopsy of the deer, and testified that he could not find any evidence that lightning killed the deer, and that there was no acute myocardial damage, an indicator of lightning as the cause of death.

[¶ 13] Although Peerless presented substantial and credible evidence that the deer were not killed by lightning, we must view all the evidence in the light most favorable to Maine Farms, and when viewed in that light, there is sufficient evidence for the jury to have found that lightning caused the deaths of the deer. *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of New York*, 2002 ME 127, ¶ 25, 818 A.2d 995, 1003. Waltz and his wife testified that they saw lightning, or a brilliant blue flash of light, on the night of September 16. In addition, Maxmin testified that he and his children saw lightning and heard thunder on the same night.

---

1. There was testimony that treeing is a phenomenon that occurs when an electrical current from lightning flows through metal, resulting in damage with a tree-like appearance.

Richard Kithil, an expert witness for Maine Farms, testified that in his opinion lightning was present at Maine Farms during the night at issue. Kithil relied on the presence of treeing as physical evidence to support his opinion. He also relied on information that the deer that were killed were standing in water and those that survived were on higher ground. In addition, Kithil testified that it is impossible to detect all lightning strikes that occur.

[¶ 14] Dr. Robert Scott, a veterinarian who visited the scene of the deaths of the deer, testified that in his opinion lightning killed the deer. After eliminating other possible causes of death, Dr. Scott testified that lightning is the only thing that will kill a group of animals "virtually instantaneously," or in the manner the deer were killed in this case. He based his opinion on test results that found no evidence of infection, bacteria, or poisoning in the dead deer. Dr. Scott also relied on pictures from the weather service showing the path of Hurricane Floyd on the date in question, and photographs of the scene taken by John Hilton showing the position of the dead deer.

[¶ 15] Although the jury could have come to a different conclusion, there is sufficient evidence in the record to support the jury's finding that lightning struck and killed Maine Farms's deer.[2]

## B. Misrepresentations Regarding the Burial of the Deer

[¶ 16] Maine Farms contends that the Superior Court erred in entering a judgment as a matter of law against it on its claim of unfair claims practices. *See* M.R. Civ. P. 50(a). At trial, Maine Farms attempted to prove that Peerless, through its representatives and agents, made misrepresentations that induced Maine Farms to bury the dead deer, and that the burial of all the deer resulted in Maine Farms being hindered in its efforts to prove that lightning was the cause of the death of the deer, further resulting in Peerless denying coverage for the loss of the deer. Maine Farms, therefore, contends it was deprived of the money it was due under the policy, and that this in turn caused other, consequential damages to its business. This, Maine Farms asserts, constitutes a violation of Peerless's duty of good faith and fair dealing. We disagree.

[¶ 17] We have held that "in every insurance contract an insurer owes a duty to act in good faith and deal fairly with its insured" in the handling of insurance claims. *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 648 (Me.1993). This duty derives from the insurer's relationship as "the authorized representative of the insured." *Linscott v. State Farm Mut. Auto. Ins. Co.*, 368 A.2d 1161, 1163 (Me.1977). The party claiming breach of the implied covenant of good faith and fair dealing has the burden of proving that the insurance company acted in bad faith or unfairly. *See, e.g., Chiapetta v. Lumbermens Mut. Ins. Co.*, 583 A.2d 198, 202 (Me.1990).

[¶ 18] John Hilton, a Cheney representative, went to the scene of the claim in order to advise Maine Farms that Peerless would do whatever it could to facilitate getting claims personnel out there, but that it could be delayed because the claim arose on a Friday afternoon. Hilton was aware that Waltz had called some veterinarians in the area and that one of the

---

**2.** The jury had before it trial testimony that more than 154 deer were killed by the lightning strike, including testimony that up to 209 deer had died as a result of lightning. Although the jury could have determined that the number was more or less than 154 deer struck and killed by lightning, there was no clear error in their finding that the number was 154. *Townsend v. Chute Chem. Co.*, 1997 ME 46, ¶ 8, 691 A.2d 199, 202.

veterinarians, Dr. Pierce, advised Waltz to bury the deer for public health reasons. Hilton specifically told Waltz "that if he intended to bury the deer, that the least he should do would be to preserve at least one or two of the dead deer carcasses so that the claims adjuster would have some evidence to examine and possibly have examined by, you know, independent parties." Waltz admitted at trial that Hilton never explicitly told him to bury the deer, and that when Hilton told him to save one for a sample, "in my mind it said he was giving me permission to bury the rest." Waltz testified that he relied on Dr. Pierce's recommendation that he should bury the deer for reasons of public health.

[¶ 19] That evidence is simply insufficient to support the claim of Maine Farms that Peerless engaged in unfair claims practices, and the record discloses no other evidence establishing that Peerless or its agents made misrepresentations in violation of its duty of good faith and fair dealing concerning the burial of the deer.[3]

### III. DAMAGES

■ [¶ 20] Both Peerless and Maine Farms make a variety of contentions regarding the damages award in this case. Because we find that Maine Farms failed to establish any cause of action other than breach of contract, and because Peerless is not required to pay pursuant to the insurance contract until Maine Farms demonstrated that it was entitled to recover for a loss covered by the insurance contract, *Dolliver v. Granite State Fire Ins. Co.*, 111 Me. 275, 282–83, 89 A. 8, 10–11 (1913), damages must be limited to the contract damages set out in the policy of recovery of $250 for each of the 154 deer that the jury found to have been killed by lightning, or $38,500. Accordingly, we vacate the damages award and remand for judgment in favor of Maine Farms in the amount of $38,500.[4]

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of a judgment for Maine Farms Venison, Inc. in the amount of $38,500 plus interest and costs.

---

3. Maine Farms also contends that the court erred when it entered a summary judgment against it on its claims of fraud and negligent misrepresentation. Maine Farms, however, failed to allege specific facts that would show that a genuine issue of material fact existed regarding each claim and that a trial on the issues was necessary, M.R. Civ. P. 56(e), and failed to properly controvert the facts contained in Peerless's statement of material facts in support of its motion for summary judgment, M.R. Civ. P. 56(h)(4); *see Rogers v. Jackson*, 2002 ME 140, ¶ 7, 804 A.2d 379, 380–81. Maine Farms failed to establish the necessary elements of these claims. *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 9, 824 A.2d 48, 52. The court, therefore, did not err when it entered a summary judgment in Peerless's favor on Maine Farms's claims of fraud and negligent misrepresentation.

4. Relying on *Spickler v. York*, 566 A.2d 1385 (Me.1989), Peerless argues that the Superior Court abused its discretion when it did not impose sanctions on Maine Farms for their failure to comply with the scheduling order and M.R. Civ. P. 16(d). Peerless's reliance on *Spickler* is misplaced because *Spickler* was based on former M.R. Civ. P. 16(h), which *mandated* the imposition of sanctions. 566 A.2d at 1388 ("if a party fails to comply with the requirements of this rule or any order made hereunder, the court *shall* impose ... such sanctions as the circumstances warrant") (emphasis added). Under the current version "the court *may* impose ... such sanctions as the circumstances warrant." M.R. Civ. P. 16(d) (emphasis added). The court's decision not to impose sanctions was within its discretion. *See, e.g., St. Paul Ins. Co. v. Hayes*, 2001 ME 71, ¶¶ 7, 16, 770 A.2d 611, 613, 616.