STATE OF MAINE
CUMBERLAND, ss.



SUPERIOR COURT
CIVIL ACTION
Docket No.: 05-CV-599

APR 28  A 10: 28

Carolyn Rumery, individually and as
personal representative of the Estate of
Donald Rumery,

       Plaintiff

       v.

Garlock Sealing Technologies, Inc., et al.,

       Defendants

**DECISION AND ORDER**
(Westinghouse)

In this action, Plaintiff seeks to recover for damages allegedly resulting from the death of Donald Rumery, due to his exposure to asbestos during the course of his employment with Central Maine Power Company. Plaintiff alleges that as the result of exposure to products manufactured or supplied by Defendant CBS Corporation, f/k/a, Viacom, Inc., f/k/a, Westinghouse Electric Corporation (Westinghouse), the decedent contracted asbestos-related illnesses, which ultimately resulted in his death. This matter is before the Court on Defendant Westinghouse's motion for summary judgment.

## I. Summary Judgment Standard of Review

M.R. Civ. P. 56(c) provides that summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact . . . and that [the] moving party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia*

1

*Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities in the facts exist, they must be resolved in favor of the non-moving party. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

To avoid summary judgment, a plaintiff must establish a *prima facie* case for each element of the cause of action. *See Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995). In *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, 917 A.2d 123, the Law Court observed:

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those maters that may be decided without factfinding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

*Id.* ¶ 18, 917 A.2d at 127 (citations omitted) (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

The opposing party to a summary judgment motion is given the benefit of any inferences which might be reasonably drawn from the evidence. *See Porter*, 2001 ME 158, ¶ 9, 784 A.2d at 22. However, neither party can rely on unsubstantiated denials, but "must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (quoting *Vinick v. Comm'r of Internal Revenue*, 110 F.3d 168, 171 (1st Cir. 1997)).

## II. Causation Standard

In this case, Plaintiff asserts claims of negligence and strict liability. For Plaintiff to prevail, Plaintiff must demonstrate, among other elements, that Defendant's conduct caused the damages for which Plaintiff seeks to recover. In Maine, to prove causation, a plaintiff must prove that the defendant's conduct "is a *substantial factor* in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989); *see also Wing v. Morse*,

300 A.2d 491, 495-96 (Me. 1973). On Defendant's motion for summary judgment, the question is, therefore, whether a material issue of fact remains for trial as to Plaintiff's allegation that Defendant's conduct or product caused Plaintiff's damages.

As asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between the plaintiff's injuries and the defendant's product has been the subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[1] In *Lohrmann*, the court announced and applied the "frequency, regularity and proximity test," which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Id.* at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage in a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman rejected the *Lohrmann* standard "[b]ecause it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. H.B. Smith Co.*, LINSC-CV-04-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[2] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

---

[1] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm." RESTATEMENT (SECOND) OF TORTS § 431.

[2] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply*, CUMSC-CV-04-452 (Me. Super. Ct., Cum. Cty., Feb. 28, 2007) and *Buck v. Eastern Refractories, Co.*, OXFSC-CV-04-15 (Me. Super. Ct., Oxf. Cty., July 23, 2007).

3

(1) "medical causation" — that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus — that the defendant's asbestos-containing product was *at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell*, at 7 (citing 63 AM. JUR. 2D *Products Liability* § 70 (2001)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time, while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion—to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. *See Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223, 1236; *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate that: (1) the defendant's product was at the plaintiff's work place, (2) the defendant's product at the plaintiff's work place contained asbestos, and (3) the plaintiff had personal contact with asbestos from the defendant's product.[3] If a plaintiff produces such evidence, which can be either direct or

---

[3] The Court recognizes that in many of the asbestos-related cases, the plaintiff asserts the claim, at least in part, on behalf of the estate of a person who was allegedly exposed to asbestos. In those cases, the plaintiff would be required to demonstrate that defendant's asbestos-containing product was present at the decedent's work place, and that the decedent had contact with the product.

circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.[4]

## III. Discussion

In support of her contention that Defendant Westinghouse is legally responsible for the decedent's illness and death, Plaintiff relies on the testimony of several former employees of Central Maine Power Company, the decedent's employer. For purposes of this motion, Plaintiff has established that: (1) the decedent worked at Central Maine Power Company's Wyman Station, (2) Defendant Westinghouse manufactured or supplied air ejectors, heat exchangers, and condensers that were incorporated into turbines located at the Wyman Station, (3) Westinghouse heat exchangers were insulated with asbestos-containing material, (4) during the construction and maintenance of the turbines, dust was created, (5) the decedent was in the area on more than one occasion when the turbines were overhauled, and (6) the decedent was present when one of the turbines was constructed.

To avoid summary judgment, Plaintiff must produce evidence that the decedent had contact with asbestos-containing products manufactured by Defendant Westinghouse. As demonstrated above, Plaintiff has produced evidence upon which a fact finder could conclude that Plaintiff was exposed to asbestos dust or particles generated by Defendant Westinghouse's products. For instance, if a fact finder considers the testimony of Richard Erskine and Merrill Fogg to be credible, the fact finder could reasonably determine that the decedent was present when asbestos dust was generated

---

[4] The Court notes that the causation standard applied by Justice Gorman in *Campbell, Boyden*, and *Buck* may not be entirely equivalent with that employed in *Bessey v. Eastern Refractories, Inc.*, SAGSC-CV-99-001, 99-020, 99-035, 99-041, 99-050, and 00-001 (Me. Sup. Ct., Sag. Cty., Feb. 19, 2002) (Bradford, J.), an earlier case in which the Superior Court addressed the issue. While *Bessey* also rejected the *Lohrmann* standard and utilized the "medical causation/product nexus" framework described in 63 AM. JUR. 2D *Products Liability* § 70, *Bessey* arguably imposes a different factual burden to establish causation at the summary judgment stage. Without affirmatively adopting either the "*Bessey* Standard" or the standard articulated by Justice Gorman in *Campbell, Boyden*, and *Buck*, the Court will analyze the causation issue in a manner consistent with established causation principles set forth by the Law Court. *See, e.g., Spickler*, 566 A.2d at 1390; *Morse*, 300 A.2d at 495-96.

from products manufactured by Defendant Westinghouse.[5] Accordingly, Plaintiff has produced sufficient evidence to generate an issue for trial.

## IV. Conclusion

Based on the foregoing analysis, the Court denies the Motion for Summary Judgment of Defendant Westinghouse.

The entry is:

The Defendant's motion for summary judgment is DENIED.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 4/24/09

Justice, Maine Superior Court

---

[5] Westinghouse argues that the affidavits and testimony of Richard Erskine and Merrill Fogg are insufficient to establish that the decedent was exposed to asbestos-containing Westinghouse heat exchangers. Westinghouse stresses that Mr. Erskine's affidavit, referring to "heat exchangers which were insulated with asbestos," fails to specify Westinghouse as the manufacturer. In addition, Westinghouse contends that although Mr. Fogg's affidavit references asbestos-containing Westinghouse heat exchangers, the affidavit fails to state that these heat exchangers were located in an area were the decedent was present. Accordingly, Westinghouse argues, neither affidavit fully establishes that the decedent was exposed to asbestos-containing Westinghouse products. Given that Plaintiff can satisfy her burden through circumstantial evidence, Westinghouse's strict reading of the affidavits submitted by the Plaintiff is unconvincing at the summary judgment stage.

STATE OF MAINE
CUMBERLAND, ss.



SUPERIOR COURT
CIVIL ACTION
Docket No.: 05-CV-599

Carolyn Rumery, individually and as
personal representative of the Estate of
Donald Rumery,

        Plaintiff

        v.

Garlock Sealing Technologies, Inc., et al.,

        Defendants

**DECISION AND ORDER**
(Goulds Pumps)

In this action, Plaintiff seeks to recover for damages allegedly resulting from the death of Donald Rumery, due to his exposure to asbestos during the course of his employment with Central Maine Power Company. Plaintiff alleges that as the result of exposure to products manufactured by Defendant Goulds Pumps, the decedent contracted asbestos-related illnesses, which ultimately resulted in his death. This matter is before the Court on Defendant Goulds Pumps' motion for summary judgment.

## I. Summary Judgment Standard of Review

M.R. Civ. P. 56(c) provides that summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact . . . and that [the] moving party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities in the facts exist,

1

they must be resolved in favor of the non-moving party. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

To avoid summary judgment, a plaintiff must establish a *prima facie* case for each element of the cause of action. *See Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995). In *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, 917 A.2d 123, the Law Court observed:

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those maters that may be decided without factfinding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

*Id.* ¶ 18, 917 A.2d at 127 (citations omitted) (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

The opposing party to a summary judgment motion is given the benefit of any inferences which might be reasonably drawn from the evidence. *See Porter*, 2001 ME 158, ¶ 9, 784 A.2d at 22. However, neither party can rely on unsubstantiated denials, but "must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (quoting *Vinick v. Comm'r of Internal Revenue*, 110 F.3d 168, 171 (1st Cir. 1997)).

## II. Causation Standard

In this case, Plaintiff asserts claims of negligence and strict liability. For Plaintiff to prevail, Plaintiff must demonstrate, among other elements, that Defendant's conduct caused the damages for which Plaintiff seeks to recover. In Maine, to prove causation, a plaintiff must prove that the defendant's conduct "is a *substantial factor* in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989); *see also Wing v. Morse*, 300 A.2d 491, 495-96 (Me. 1973). On Defendant's motion for summary judgment, the

2

question is, therefore, whether a material issue of fact remains for trial as to Plaintiff's allegation that Defendant's conduct or product caused Plaintiff's damages.

As asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between the plaintiff's injuries and the defendant's product has been the subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[1] In *Lohrmann*, the court announced and applied the "frequency, regularity and proximity test," which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Id.* at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage in a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman rejected the *Lohrmann* standard "[b]ecause it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. H.B. Smith Co.*, LINSC-CV-04-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[2] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

---

[1] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm." RESTATEMENT (SECOND) OF TORTS § 431.
[2] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply*, CUMSC-CV-04-452 (Me. Super. Ct., Cum. Cty., Feb. 28, 2007) and *Buck v. Eastern Refractories, Co.*, OXFSC-CV-04-15 (Me. Super. Ct., Oxf. Cty., July 23, 2007).

(1) "medical causation" — that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus — that the defendant's asbestos-containing product was *at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell*, at 7 (citing 63 AM. JUR. 2D *Products Liability* § 70 (2001)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time, while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion—to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. *See Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223, 1236; *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate that: (1) the defendant's product was at the plaintiff's work place, (2) the defendant's product at the plaintiff's work place contained asbestos, and (3) the plaintiff had personal contact with asbestos from the defendant's product.[3] If a plaintiff produces such evidence, which can be either direct or

---

[3] The Court recognizes that in many of the asbestos-related cases, the plaintiff asserts the claim, at least in part, on behalf of the estate of a person who was allegedly exposed to asbestos. In those cases, the plaintiff would be required to demonstrate that defendant's asbestos-containing product was present at the decedent's work place, and that the decedent had contact with the product.

4

circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.[4]

## III. Discussion

In support of her contention that Defendant Goulds Pumps is legally responsible for the decedent's illness and death, Plaintiff relies on the testimony of several former employees of Central Maine Power Company, the decedent's employer. For purposes of this motion, Plaintiff has established that: (1) the decedent worked at Central Maine Power Company's Wyman Station, (2) there were many pumps located at Wyman Station, (3) Goulds Pumps manufactured some of the pumps located at Wyman Station, (4) some Goulds Pumps' products might have included asbestos-containing material, (5) some of the pumps were packed with asbestos-containing material, and (6) during the course of his employment at the Wyman Station, the decedent was present in areas in which pumps were operated and/or maintained.

To avoid summary judgment, Plaintiff must produce evidence that the decedent had contact with asbestos-containing products manufactured by Defendant Goulds Pumps. While Plaintiff has demonstrated for summary judgment purposes that products manufactured by Defendant Goulds Pumps were present at the Wyman Station, Plaintiff has not produced evidence from which a fact finder could conclude, without speculation, that the decedent came in contact with asbestos-containing products manufactured by Defendant Goulds Pumps. First, Plaintiff has not identified any witness who observed the decedent work on or around the Defendant's pumps. There is thus no direct evidence of contact between the decedent and Defendant's product.

---

[4] The Court notes that the causation standard applied by Justice Gorman in *Campbell*, *Boyden*, and *Buck* may not be entirely equivalent with that employed in *Bessey v. Eastern Refractories, Inc.*, SAGSC-CV-99-001, 99-020, 99-035, 99-041, 99-050, and 00-001 (Me. Sup. Ct., Sag. Cty., Feb. 19, 2002) (Bradford, J.), an earlier case in which the Superior Court addressed the issue. While *Bessey* also rejected the *Lohrmann* standard and utilized the "medical causation/product nexus" framework described in 63 AM. JUR. 2D *Products Liability* § 70, *Bessey* arguably imposes a different factual burden to establish causation at the summary judgment stage. Without affirmatively adopting either the "*Bessey* Standard" or the standard articulated by Justice Gorman in *Campbell*, *Boyden*, and *Buck*, the Court will analyze the causation issue in a manner consistent with established causation principles set forth by the Law Court. *See, e.g., Spickler*, 566 A.2d at 1390; *Morse*, 300 A.2d at 495-96.

In addition, the circumstantial evidence upon which Plaintiff relies fails to establish the necessary contact between the decedent and the Defendant's product. The record reveals that hundreds of pumps were in operation at the Wyman Station. Given the number of pumps at the Wyman Station, Plaintiff cannot simply rely upon the fact that Defendant Goulds Pumps manufactured *some* of the pumps in order to avoid summary judgment. Had Plaintiff established that Defendant Goulds Pumps was the exclusive supplier of pumps for the Wyman Station, or demonstrated that the number of pumps supplied by Defendant was such that it was likely that the decedent had contact with Defendant's product, Plaintiff might survive summary judgment even without any direct evidence of the decedent's contact with Defendant's products. That is, if Defendant supplied all or a substantial portion of the pumps at Wyman Station, the Court might conclude that a fact finder could reasonably determine that the decedent had contact with Defendant Goulds Pumps' products. Where, as here, there are hundreds of pumps located at Wyman Station, and Defendant Goulds Pumps is not the exclusive supplier of the pumps, Plaintiff cannot rely on circumstantial evidence (i.e., that Defendant supplied some pumps and the decedent worked in the vicinity of pumps) to support her contention that the decedent had contact with Defendant Goulds Pumps' products. Plaintiff cannot, therefore, as a matter of law, prevail on her claim.

## IV. Conclusion

Based on the foregoing analysis, the Court grants the Motion for Summary Judgment of Defendant Goulds Pumps.

The entry is:

> The Defendant's motion for summary judgment is GRANTED.
> Judgment is entered in favor of the Defendant on all counts.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 4/24/09

Justice, Maine Superior Court

STATE OF MAINE                           SUPERIOR COURT
CUMBERLAND, ss.                                          CIVIL ACTION
                                                         Docket No.: 05-CV-599


Carolyn Rumery, individually and as
personal representative of the Estate of
Donald Rumery,

          Plaintiff
                                                  **DECISION AND ORDER**
          v.                                          (IMO Industries)


Garlock Sealing Technologies, Inc., et al.,

          Defendants


In this action, Plaintiff seeks to recover for damages allegedly resulting from the death of Donald Rumery, due to his exposure to asbestos during the course of his employment with Central Maine Power Company. Plaintiff alleges that as the result of exposure to products manufactured or supplied by Defendant IMO Industries, Inc. (IMO), a successor entity to DeLaval, the decedent contracted asbestos-related illnesses, which ultimately resulted in his death. This matter is before the Court on Defendant IMO's motion for summary judgment.


## I. Summary Judgment Standard of Review

M.R. Civ. P. 56(c) provides that summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact . . . and that [the] moving party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia*

1

*Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities in the facts exist, they must be resolved in favor of the non-moving party. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

To avoid summary judgment, a plaintiff must establish a *prima facie* case for each element of the cause of action. *See Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995). In *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, 917 A.2d 123, the Law Court observed:

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those maters that may be decided without factfinding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

*Id.* ¶ 18, 917 A.2d at 127 (citations omitted) (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

The opposing party to a summary judgment motion is given the benefit of any inferences which might be reasonably drawn from the evidence. *See Porter*, 2001 ME 158, ¶ 9, 784 A.2d at 22. However, neither party can rely on unsubstantiated denials, but "must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (quoting *Vinick v. Comm'r of Internal Revenue*, 110 F.3d 168, 171 (1st Cir. 1997)).

## II. Causation Standard

In this case, Plaintiff asserts claims of negligence and strict liability. For Plaintiff to prevail, Plaintiff must demonstrate, among other elements, that Defendant's conduct caused the damages for which Plaintiff seeks to recover. In Maine, to prove causation, a plaintiff must prove that the defendant's conduct "is a *substantial factor* in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989); *see also Wing v. Morse*,

300 A.2d 491, 495-96 (Me. 1973). On Defendant's motion for summary judgment, the question is, therefore, whether a material issue of fact remains for trial as to Plaintiff's allegation that Defendant's conduct or product caused Plaintiff's damages.

As asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between the plaintiff's injuries and the defendant's product has been the subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[1] In *Lohrmann*, the court announced and applied the "frequency, regularity and proximity test," which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Id.* at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage in a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman rejected the *Lohrmann* standard "[b]ecause it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. H.B. Smith Co.*, LINSC-CV-04-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[2] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

---

[1] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm." RESTATEMENT (SECOND) OF TORTS § 431.
[2] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply*, CUMSC-CV-04-452 (Me. Super. Ct., Cum. Cty., Feb. 28, 2007) and *Buck v. Eastern Refractories, Co.*, OXFSC-CV-04-15 (Me. Super. Ct., Oxf. Cty., July 23, 2007).

(1) "medical causation" — that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus — that the defendant's asbestos-containing product was *at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell*, at 7 (citing 63 AM. JUR. 2D *Products Liability* § 70 (2001)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time, while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion—to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. *See Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223, 1236; *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate that: (1) the defendant's product was at the plaintiff's work place, (2) the defendant's product at the plaintiff's work place contained asbestos, and (3) the plaintiff had personal contact with asbestos from the defendant's product.[3] If a plaintiff produces such evidence, which can be either direct or

---

[3] The Court recognizes that in many of the asbestos-related cases, the plaintiff asserts the claim, at least in part, on behalf of the estate of a person who was allegedly exposed to asbestos. In those cases, the plaintiff would be required to demonstrate that defendant's asbestos-containing product was present at the decedent's work place, and that the decedent had contact with the product.

4

circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.[4]

## III. Discussion

In support of her contention that Defendant IMO is legally responsible for the decedent's illness and death, Plaintiff relies on the testimony of several former employees of Central Maine Power Company, the decedent's employer, as well as information contained in various documents. For purposes of this motion, Plaintiff has established that: (1) the decedent worked at Central Maine Power Company's Wyman Station, (2) DeLaval, Defendant IMO's predecessor entity, manufactured pumps, some of which were present at Wyman Station during the time of the decedent's employment, (3) asbestos-containing material, such as packing and gaskets, might have been used in some pumps at Wyman Station, (4) there were hundreds of pumps located at Wyman Station, which were manufactured by a number of different entities, and (5) the decedent did not work directly on pumps.[5]

To avoid summary judgment, Plaintiff must produce evidence from which a reasonable fact finder could conclude that the decedent had contact with an asbestos-containing product manufactured by Defendant IMO. Significantly, Plaintiff has produced no direct evidence (e.g., testimony of an eyewitness) to establish that the decedent had any contact with DeLaval pumps. Instead, Plaintiff attempts to rely on circumstantial evidence to prove the necessary contact between the decedent and Defendant's product. More specifically, Plaintiff points to the fact that pumps

---

[4] The Court notes that the causation standard applied by Justice Gorman in *Campbell*, *Boyden*, and *Buck* may not be entirely equivalent with that employed in *Bessey v. Eastern Refractories, Inc.*, SAGSC-CV-99-001, 99-020, 99-035, 99-041, 99-050, and 00-001 (Me. Sup. Ct., Sag. Cty., Feb. 19, 2002) (Bradford, J.), an earlier case in which the Superior Court addressed the issue. While *Bessey* also rejected the *Lohrmann* standard and utilized the "medical causation/product nexus" framework described in 63 AM. JUR. 2D *Products Liability* § 70, *Bessey* arguably imposes a different factual burden to establish causation at the summary judgment stage. Without affirmatively adopting either the "*Bessey* Standard" or the standard articulated by Justice Gorman in *Campbell*, *Boyden*, and *Buck*, the Court will analyze the causation issue in a manner consistent with established causation principles set forth by the Law Court. *See, e.g., Spickler*, 566 A.2d at 1390; *Morse*, 300 A.2d at 495-96.

[5] There is, however, evidence that the decedent was in "close proximity" when pumps were repacked.

5

manufactured by DeLaval, some of which contained asbestos, were present at Wyman Station. Although a party can prove the necessary relationship between a claimant and a particular product by circumstantial evidence, the mere fact that a product was present at a particular site, and might have contained asbestos material, is insufficient to satisfy the party's burden at this stage of the proceedings. At best, the evidence in this case suggests that the decedent *might* have had contact with a pump manufactured by one of several entities, which *might* have contained asbestos material. On this evidence, a fact finder would, therefore, have to speculate as to whether the decedent had contact with Defendant's product. Accordingly, Plaintiff cannot, as a mater of law, prevail on her claim.

## IV. Conclusion

Based on the foregoing analysis, the Court grants the Motion for Summary Judgment of Defendant IMO.

The entry is:

> The Defendant's motion for summary judgment is GRANTED.
> Judgment is entered in favor of the Defendant on all counts.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 4/24/09

Justice, Maine Superior Court

6

STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2001 APR 28 A 10: 27

SUPERIOR COURT
CIVIL ACTION
Docket No.: 05-CV-599

Carolyn Rumery, individually and as
personal representative of the Estate of
Donald Rumery,

       Plaintiff

**DECISION AND ORDER**
(DeZurik)

v.

Garlock Sealing Technologies, Inc., et al.,

       Defendants

In this action, Plaintiff seeks to recover for damages allegedly resulting from the death of Donald Rumery, due to his exposure to asbestos during the course of his employment with Central Maine Power Company. Plaintiff alleges that as the result of exposure to products manufactured or supplied by Defendant DeZurik, the decedent contracted asbestos-related illnesses, which ultimately resulted in his death. This matter is before the Court on Defendant DeZurik's motion for summary judgment.

## I. Summary Judgment Standard of Review

M.R. Civ. P. 56(c) provides that summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact . . . and that [the] moving party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities in the facts exist,

1

they must be resolved in favor of the non-moving party. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

To avoid summary judgment, a plaintiff must establish a *prima facie* case for each element of the cause of action. *See Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995). In *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, 917 A.2d 123, the Law Court observed:

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those maters that may be decided without factfinding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

*Id.* ¶ 18, 917 A.2d at 127 (citations omitted) (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

The opposing party to a summary judgment motion is given the benefit of any inferences which might be reasonably drawn from the evidence. *See Porter*, 2001 ME 158, ¶ 9, 784 A.2d at 22. However, neither party can rely on unsubstantiated denials, but "must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (quoting *Vinick v. Comm'r of Internal Revenue*, 110 F.3d 168, 171 (1st Cir. 1997)).

## II. Causation Standard

In this case, Plaintiff asserts claims of negligence and strict liability. For Plaintiff to prevail, Plaintiff must demonstrate, among other elements, that Defendant's conduct caused the damages for which Plaintiff seeks to recover. In Maine, to prove causation, a plaintiff must prove that the defendant's conduct "is a *substantial factor* in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989); *see also Wing v. Morse*, 300 A.2d 491, 495-96 (Me. 1973). On Defendant's motion for summary judgment, the

2

question is, therefore, whether a material issue of fact remains for trial as to Plaintiff's allegation that Defendant's conduct or product caused Plaintiff's damages.

As asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between the plaintiff's injuries and the defendant's product has been the subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[1] In *Lohrmann*, the court announced and applied the "frequency, regularity and proximity test," which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Id.* at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage in a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman rejected the *Lohrmann* standard "[b]ecause it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. H.B. Smith Co.*, LINSC-CV-04-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[2] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

---

[1] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm." RESTATEMENT (SECOND) OF TORTS § 431.

[2] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply*, CUMSC-CV-04-452 (Me. Super. Ct., Cum. Cty., Feb. 28, 2007) and *Buck v. Eastern Refractories, Co.*, OXFSC-CV-04-15 (Me. Super. Ct., Oxf. Cty., July 23, 2007).

3

(1) "medical causation" — that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus — that the defendant's asbestos-containing product was *at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell*, at 7 (citing 63 AM. JUR. 2D *Products Liability* § 70 (2001)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time, while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion—to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. *See Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223, 1236; *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate that: (1) the defendant's product was at the plaintiff's work place, (2) the defendant's product at the plaintiff's work place contained asbestos, and (3) the plaintiff had personal contact with asbestos from the defendant's product.[3] If a plaintiff produces such evidence, which can be either direct or

---

[3] The Court recognizes that in many of the asbestos-related cases, the plaintiff asserts the claim, at least in part, on behalf of the estate of a person who was allegedly exposed to asbestos. In those cases, the plaintiff would be required to demonstrate that defendant's asbestos-containing product was present at the decedent's work place, and that the decedent had contact with the product.

4

circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.[4]

## III. Discussion

In support of her contention that Defendant DeZurik is legally responsible for the decedent's illness and death, Plaintiff relies on the testimony of several former employees of Central Maine Power Company, the decedent's employer, as well as additional information derived from Defendant through discovery. For purposes of this motion, Plaintiff has established that: (1) the decedent worked at Central Maine Power Company's Wyman Station, (2) Defendant DeZurik manufactured or supplied valves that were located at the Wyman Station during the time of the decedent's employment, (3) during the time of decedent's employment at the Wyman Station, Defendant DeZurik utilized some asbestos-containing material in some of its products, (4) of the "hundreds of thousands of valves" at the Wyman Station facility, "maybe 30 to 50" of them were DeZurik valves, and (5) at times during his employment, including during "shut downs," the decedent was in the area where work was performed on valves under circumstances that could generate dust and particles of asbestos.[5]

To avoid summary judgment, Plaintiff must produce evidence from which a reasonable fact finder could conclude that the decedent had contact with an asbestos-containing product manufactured by Defendant DeZurik. Although Plaintiff has demonstrated for summary judgment purposes that Defendant DeZurik's product was present at the Wyman Station, and that some of DeZurik's products generally contained

---

[4] The Court notes that the causation standard applied by Justice Gorman in *Campbell*, *Boyden*, and *Buck* may not be entirely equivalent with that employed in *Bessey v. Eastern Refractories, Inc.*, SAGSC-CV-99-001, 99-020, 99-035, 99-041, 99-050, and 00-001 (Me. Sup. Ct., Sag. Cty., Feb. 19, 2002) (Bradford, J.), an earlier case in which the Superior Court addressed the issue. While *Bessey* also rejected the *Lohrmann* standard and utilized the "medical causation/product nexus" framework described in 63 AM. JUR. 2D *Products Liability* § 70, *Bessey* arguably imposes a different factual burden to establish causation at the summary judgment stage. Without affirmatively adopting either the "*Bessey* Standard" or the standard articulated by Justice Gorman in *Campbell*, *Boyden*, and *Buck*, the Court will analyze the causation issue in a manner consistent with established causation principles set forth by the Law Court. *See, e.g., Spickler*, 566 A.2d at 1390; *Morse*, 300 A.2d at 495-96.

[5] The circumstances include the repacking of valves during shutdowns and in the course of general maintenance.

5

asbestos, the Plaintiff has produced no evidence from which a rational fact finder could conclude that the decedent had contact with Defendant DeZurik's product. First, Plaintiff has not identified a witness who observed the decedent work on or around Defendant's product. Plaintiff cannot, therefore, prove the necessary contact by direct evidence. In addition, Plaintiff's attempt to prove through circumstantial evidence the contact between the decedent and Defendant's product fails. Essentially, Plaintiff contends that because Defendant supplied some valves to the Wyman Station, some of which contained asbestos, and because the decedent at times worked on or around valves, a fact finder could reasonably conclude that the decedent had contact with Defendant's product. The mere articulation of Plaintiff's argument illustrates the argument's shortcomings. Because the number of valves manufactured by Defendant DeZurik at Wyman Station is comparatively small, in the absence of any direct evidence of contact between the decedent and Defendant's product, a fact finder can only speculate as to whether the decedent in fact had contact with Defendant's product. Plaintiff cannot, therefore, as a matter of law, prevail on her claim.

## IV. Conclusion

Based on the foregoing analysis, the Court grants the Motion for Summary Judgment of Defendant DeZurik.

The entry is:

> The Defendant's motion for summary judgment is GRANTED.
> Judgment is entered in favor of the Defendant on all counts.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 4/24/09

Justice, Maine Superior Court

6

STATE OF MAINE                       SUPERIOR COURT
CUMBERLAND, ss.                                          CIVIL ACTION
                                                         Docket No.: 05-CV-599

:UM APR 28  A 10: 27


Carolyn Rumery, individually and as
personal representative of the Estate of
Donald Rumery,

        Plaintiff
                                              **DECISION AND ORDER**
        v.                        (Foster Wheeler)


Garlock Sealing Technologies, Inc., et al.,

        Defendants


     In this action, Plaintiff seeks to recover for damages allegedly resulting from the death of Donald Rumery, due to his exposure to asbestos during the course of his employment with Central Maine Power Company. Plaintiff alleges that as the result of exposure to products manufactured or supplied by Defendant Foster Wheeler Energy Corp., a/k/a, Foster Wheeler Energy, Inc. (Foster Wheeler), the decedent contracted asbestos-related illnesses, which ultimately resulted in his death. This matter is before the Court on Defendant Foster Wheeler's motion for summary judgment.

## I. Summary Judgment Standard of Review

     M.R. Civ. P. 56(c) provides that summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact . . . and that [the] moving party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia*

1

*Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities in the facts exist, they must be resolved in favor of the non-moving party. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

To avoid summary judgment, a plaintiff must establish a *prima facie* case for each element of the cause of action. *See Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995). In *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, 917 A.2d 123, the Law Court observed:

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those maters that may be decided without factfinding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

*Id.* ¶ 18, 917 A.2d at 127 (citations omitted) (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

The opposing party to a summary judgment motion is given the benefit of any inferences which might be reasonably drawn from the evidence. *See Porter*, 2001 ME 158, ¶ 9, 784 A.2d at 22. However, neither party can rely on unsubstantiated denials, but "must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (quoting *Vinick v. Comm'r of Internal Revenue*, 110 F.3d 168, 171 (1st Cir. 1997)).

## II. Causation Standard

In this case, Plaintiff asserts claims of negligence and strict liability. For Plaintiff to prevail, Plaintiff must demonstrate, among other elements, that Defendant's conduct caused the damages for which Plaintiff seeks to recover. In Maine, to prove causation, a plaintiff must prove that the defendant's conduct "is a *substantial factor* in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989); *see also Wing v. Morse*,

300 A.2d 491, 495-96 (Me. 1973). On Defendant's motion for summary judgment, the question is, therefore, whether a material issue of fact remains for trial as to Plaintiff's allegation that Defendant's conduct or product caused Plaintiff's damages.

As asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between the plaintiff's injuries and the defendant's product has been the subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[1] In *Lohrmann*, the court announced and applied the "frequency, regularity and proximity test," which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Id.* at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage in a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman rejected the *Lohrmann* standard "[b]ecause it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. H.B. Smith Co.*, LINSC-CV-04-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[2] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

---

[1] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm." RESTATEMENT (SECOND) OF TORTS § 431.

[2] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply*, CUMSC-CV-04-452 (Me. Super. Ct., Cum. Cty., Feb. 28, 2007) and *Buck v. Eastern Refractories, Co.*, OXFSC-CV-04-15 (Me. Super. Ct., Oxf. Cty., July 23, 2007).

3

(1) "medical causation" — that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus — that the defendant's asbestos-containing product was *at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell*, at 7 (citing 63 AM. JUR. 2D *Products Liability* § 70 (2001)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time, while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion—to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. *See Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223, 1236; *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate that: (1) the defendant's product was at the plaintiff's work place, (2) the defendant's product at the plaintiff's work place contained asbestos, and (3) the plaintiff had personal contact with asbestos from the defendant's product.[3] If a plaintiff produces such evidence, which can be either direct or

---

[3] The Court recognizes that in many of the asbestos-related cases, the plaintiff asserts the claim, at least in part, on behalf of the estate of a person who was allegedly exposed to asbestos. In those cases, the plaintiff would be required to demonstrate that defendant's asbestos-containing product was present at the decedent's work place, and that the decedent had contact with the product.

4

circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.[4]

## III. Discussion

In support of her contention that Defendant Foster Wheeler is legally responsible for the decedent's illness and death, Plaintiff relies on the testimony of several former employees of Central Maine Power Company, the decedent's employer, as well as information contained in various documents. For purposes of this motion, Plaintiff has established that: (1) the decedent worked at Central Maine Power Company's Wyman Station, (2) Defendant Foster Wheeler manufactured three of the boilers that were located at the Wyman Station during the time of the decedent's employment, (3) asbestos-containing material, including insulation, block, and joint compound, was used on component parts of the boilers, (4) the decedent started the boilers on occasion and was present when maintenance was performed on the boilers, and (5) dust from the asbestos-containing material was generated when maintenance was performed on the boilers.

To avoid summary judgment, Plaintiff must produce evidence from which a reasonable fact finder could conclude that the decedent had contact with an asbestos-containing product manufactured by Defendant Foster Wheeler. For summary judgment purposes, given the number of boilers at the Wyman Station that Defendant Foster Wheeler manufactured, and given that the decedent worked in and around the boilers on occasion, Plaintiff has established that the decedent had contact with the product of Defendant Foster Wheeler, and that the product contained asbestos-containing material. However, there is no evidence upon which a fact finder could rely to conclude that the boilers contained asbestos material when they left Defendant Foster Wheeler's control.

---

[4] The Court notes that the causation standard applied by Justice Gorman in *Campbell, Boyden,* and *Buck* may not be entirely equivalent with that employed in *Bessey v. Eastern Refractories, Inc.,* SAGSC-CV-99-001, 99-020, 99-035, 99-041, 99-050, and 00-001 (Me. Sup. Ct., Sag. Cty., Feb. 19, 2002) (Bradford, J.), an earlier case in which the Superior Court addressed the issue. While *Bessey* also rejected the *Lohrmann* standard and utilized the "medical causation/product nexus" framework described in 63 AM. JUR. 2D *Products Liability* § 70, *Bessey* arguably imposes a different factual burden to establish causation at the summary judgment stage. Without affirmatively adopting either the "*Bessey* Standard" or the standard articulated by Justice Gorman in *Campbell, Boyden,* and *Buck,* the Court will analyze the causation issue in a manner consistent with established causation principles set forth by the Law Court. *See, e.g., Spickler,* 566 A.2d at 1390; *Morse,* 300 A.2d at 495-96.

The issue is thus whether Defendant Foster Wheeler can be legally responsible for the asbestos-containing material that was incorporated in the boilers after the boilers left the control of Defendant Foster Wheeler.

Plaintiff maintains that she need not prove that the boilers contained asbestos when the boilers left the control of Defendant Foster Wheeler. Under Maine law, Plaintiff must prove that Defendant Foster Wheeler's product "[was] expected to and [did] reach the user or consumer without significant change in the condition in which it is sold." 14 M.R.S. § 221. In *Marois v. Paper Converting Mach. Co.*, 539 A.2d 621, 624 (Me. 1988), the Law Court, when defining the scope of Maine's strict liability statute, concluded that "... even if a substantive change is made in a product, the manufacturer will not be relieved of liability unless the change was an unforeseen and intervening proximate cause of the injury." Plaintiff argues that she has at least generated an issue of fact as to causation because the addition of asbestos material to the boilers was a foreseeable event. More specifically, Plaintiff maintains that Defendant Foster Wheeler was aware that insulation must be added to the boilers and, under *Marois*, Defendant Foster Wheeler is not relieved of liability.

Plaintiff's argument essentially concedes that Defendant Foster Wheeler's product (i.e., the boilers) did not contain asbestos when it left the Defendant's control. Plaintiff maintains that she need not prove that the Defendant's product contained asbestos when the product left the control of the Defendant. Instead, Plaintiff claims that, under 14 M.R.S. § 221 (2008),[5] a manufacturer or supplier is liable for asbestos-containing components that were foreseeably used in conjunction with their products, even though the manufacturer or supplier had not manufactured or supplied the asbestos-containing components that actually caused the injuries.

---

[5] The strict liability statute provides in its entirety: "One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume of be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller." 14 M.R.S. § 221.

Strict liability pursuant to 14 M.R.S. § 221 may arise under any of three different theories: (1) a defect in the manufacture of a product; (2) a defect in the design of a product; or (3) a failure of the manufacturer to adequately warn with respect to danger in the use of a product. *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 n.3 (Me. 1986); *Walker v. General Elec. Co.*, 968 F.2d 116, 119 (1st Cir. 1992). The basis for imposing strict liability on a particular defendant is that "the product must be in some respect defective." *Bernier*, 516 A.2d at 537.

Where, as here, there is no evidence that the defendant's product contained asbestos at the time of its manufacture and otherwise functioned as designed, Plaintiff cannot contend that the defendant's products were defective in design or manufacture. Instead, Plaintiff's theory of liability must be premised upon a failure to warn. *See Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 196 (Me. 1990) (explaining that under section 221, even where a product is faultlessly made, it may be deemed "defective" if it is "unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied without such warning"). Essentially, Plaintiff claims that because the use of asbestos-containing packing and gaskets in conjunction with Defendant's product was foreseeable, liability for the failure to warn of the dangers of asbestos should attach. The Court disagrees.

A product liability action for failure to warn requires a three-part analysis: (1) whether the defendant held a duty to warn the plaintiff; (2) whether the actual warning on the product, if any, was inadequate; and (3) whether the inadequate warning proximately caused the plaintiff's injury. *Pottle v. Up-Right, Inc.*, 628 A.2d 672, 675 (Me. 1993). "A duty to warn arises when the manufacturer knew or should have known of a danger sufficiently serious to require a warning." *Id.*; *see also Bernier*, 516 A.2d at 540 ("A manufacturer has a responsibility to inform users and consumers of dangers about which he either knows or should know at the time the product is sold."). Such an articulation of the duty to warn would, at first, seem to indicate that any foreseeable use of asbestos in conjunction with a defendant's products would be a fundamental issue in determining a defendant's duty to warn. Importantly, however, the issue of knowledge or forseeability

relates to whether a manufacturer or supplier knew of the dangers of its *own* product at the time of distribution. Although the Law Court does not appear to have addressed this issue directly, the Law Court has described a manufacturer's liability for failure to warn in terms of the manufacturer's responsibility to alert consumers of defects inherent in the manufacturer's own products. *See, e.g., Bernier,* 516 A.2d at 537 (discussing whether "a manufacturer's actual or constructive knowledge of *his product's* danger" is relevant) (emphasis added); *Pottle,* 628 A.2d at 674-75 ("Strict products liability attaches to a manufacturer when by . . . the failure to provide adequate warnings about *its hazards,* a product is sold in a condition unreasonably dangerous to the user.") (emphasis added). To date, Maine case law has not imposed upon a manufacturer a duty to warn about the dangerous propensities of other manufacturer's products. Moreover, the Court is not aware that the Law Court has deviated from the majority rule that "a manufacturer's duty to warn is restricted to warnings based on the characteristics of the manufacturer's own products." *See Braaten v. Saberhagen Holdings,* 198 P.3d 493, 498-99 (Wash. 2008) (collecting cases supporting "the majority rule nationwide").[6]

Recent extra-jurisdictional authority is particularly analogous to the present case. In *Braaten* and a companion case from the Washington Supreme Court, *Simonetta v. Viad Corp.,* 197 P.3d 127 (Wash. 2008), which addressed the duty to warn under the RESTATEMENT (SECOND) OF TORTS § 402A,[7] the court held that liability will not arise if the failure to warn of the danger of asbestos exposure arises from asbestos-containing insulation applied to a defendant's product which the defendant did not manufacture or distribute.[8] *See Braaten,* 198 P.3d at 498; *Simonetta,* 197 P.3d at 138; *see also Taylor v. Elliott Turbomachinery Co.,* 171 Cal. App. 4th 564, 591-92 (Cal. Ct. App. 2009) (finding

---

[6] *See also Taylor v. Elliott Turbomachinery Co.,* 171 Cal. App. 4th 564, 580-84 (Cal. Ct. App. 2009) (reviewing of some of the relevant policy considerations supporting the majority rule).

[7] "The Legislature formulated section 221 directly from section 402A of the Restatement (Second) of Torts (1965)." *Bernier,* 516 A.2d at 537-38. When interpreting 14 M.R.S. § 221, the Law Court has customarily looked to the Restatement, including its commentary. *See, e.g., Bernier,* 516 A.2d at 538 ("Since section 221 and its legislative history does not have anything to say . . . the commentary to section 402A is an appropriate place to begin our analysis.")

[8] The court in *Braaten* and *Simonetta* also found that the Defendant-manufacturers were not strictly liable for a failure to warn because they were not part of the chain of distribution of the injury-causing products (i.e., the asbestos-containing packing and gaskets). *Braaten,* 198 P.3d at 497; *Simonetta,* 197 P.3d at 136; *see also Taylor,* 171 Cal. App. 4th at 577-78 (same).

8

*Braaten* and *Simonetta* to be "convincing support" for court's determination of same issue); *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 495 (6th Cir. 2005) (manufacturer could "not be held responsible for material 'attached or connected' to its product on a claim of manufacturing defect"). Similarly, in this case, it was not the Defendant's product, but the dangers inherent in the asbestos-containing packing and gaskets, a product the Defendant did not manufacture or supply, that proximately caused the Plaintiff's alleged damages. As there is no strict liability for a failure to warn solely of the hazards inherent in another product, the forseeability argument regarding the adequacy of warnings is not pertinent. In sum, although not controlling authority, the Court agrees with the reasoning articulated in *Braaten* and *Simonetta*: the Defendant is not liable for the injury-causing materials supplied by third parties used in conjunction with the Defendant's products.[9]

## IV. Conclusion

Based on the foregoing analysis, the Court denies the Motion for Summary Judgment of Defendant Foster Wheeler.

The entry is:

The Defendant's motion for summary judgment is GRANTED.
Judgment is entered in favor of Defendant on all counts.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 4/24/09

Justice, Maine Superior Court

---

[9] Plaintiff argues that a "manufacturer will not be relieved of liability unless the change was an unforeseen and intervening proximate cause of the injury." *Marois v. Paper Converting Mach. Co.*, 539 A.2d 621, 624 (Me. 1988). Whether the application of asbestos to the defendant's product was unforeseen or a substantial alteration, however, addresses the issue of proximate cause. *See id.* at 623 ("The proximate cause issue in the case at bar arises from the modification of this machine after it left the Defendant's control."). Because, as discussed, the Defendant has no duty to warn, the Court does not reach this issue.

STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss. CIVIL ACTION
Docket No.: 05-CV-599

2009 APR 28 A 10: 28

Carolyn Rumery, individually and as
personal representative of the Estate of
Donald Rumery,

Plaintiff

**DECISION AND ORDER**
v. (John Crane, Inc.)


Garlock Sealing Technologies, Inc., et al.,

Defendants


In this action, Plaintiff seeks to recover for damages allegedly resulting from the death of Donald Rumery, due to his exposure to asbestos during the course of his employment with Central Maine Power Company. Plaintiff alleges that as the result of exposure to products manufactured or supplied by Defendant John Crane, Inc., the decedent contracted asbestos-related illnesses, which ultimately resulted in his death. This matter is before the Court on Defendant John Crane, Inc.'s motion for summary judgment.

## I. Summary Judgment Standard of Review

M.R. Civ. P. 56(c) provides that summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact . . . and that [the] moving party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities in the facts exist,

1

they must be resolved in favor of the non-moving party. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

To avoid summary judgment, a plaintiff must establish a *prima facie* case for each element of the cause of action. *See Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995). In *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, 917 A.2d 123, the Law Court observed:

> [A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial. It is, at base, "simply a procedural device for obtaining judicial resolution of those maters that may be decided without factfinding." If facts material to the resolution of the matter have been properly placed in dispute, summary judgment based on those facts is not available except in those instances where the facts properly proffered would be flatly insufficient to support a judgment in favor of the nonmoving party as a matter of law.

*Id.* ¶ 18, 917 A.2d at 127 (citations omitted) (quoting *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22).

The opposing party to a summary judgment motion is given the benefit of any inferences which might be reasonably drawn from the evidence. *See Porter*, 2001 ME 158, ¶ 9, 784 A.2d at 22. However, neither party can rely on unsubstantiated denials, but "must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Servs.*, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (quoting *Vinick v. Comm'r of Internal Revenue*, 110 F.3d 168, 171 (1st Cir. 1997)).

## II. Causation Standard

In this case, Plaintiff asserts claims of negligence and strict liability. For Plaintiff to prevail, Plaintiff must demonstrate, among other elements, that Defendant's conduct caused the damages for which Plaintiff seeks to recover. In Maine, to prove causation, a plaintiff must prove that the defendant's conduct "is a *substantial factor* in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989); *see also Wing v. Morse*, 300 A.2d 491, 495-96 (Me. 1973). On Defendant's motion for summary judgment, the

2

question is, therefore, whether a material issue of fact remains for trial as to Plaintiff's allegation that Defendant's conduct or product caused Plaintiff's damages.

As asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between the plaintiff's injuries and the defendant's product has been the subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the Restatement (Second) of Torts.[1] In *Lohrmann*, the court announced and applied the "frequency, regularity and proximity test," which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. *Id.* at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage in a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman rejected the *Lohrmann* standard "[b]ecause it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. H.B. Smith Co.*, LINSC-CV-04-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[2] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

---

[1] The Restatement (Second) of Torts is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm." RESTATEMENT (SECOND) OF TORTS § 431.

[2] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply*, CUMSC-CV-04-452 (Me. Super. Ct., Cum. Cty., Feb. 28, 2007) and *Buck v. Eastern Refractories, Co.*, OXFSC-CV-04-15 (Me. Super. Ct., Oxf. Cty., July 23, 2007).

3

(1) "medical causation" — that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus — that the defendant's asbestos-containing product was *at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Campbell*, at 7 (citing 63 AM. JUR. 2D *Products Liability* § 70 (2001)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time, while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion—to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. *See Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223, 1236; *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757, 759. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate that: (1) the defendant's product was at the plaintiff's work place, (2) the defendant's product at the plaintiff's work place contained asbestos, and (3) the plaintiff had personal contact with asbestos from the defendant's product.[3] If a plaintiff produces such evidence, which can be either direct or

---

[3] The Court recognizes that in many of the asbestos-related cases, the plaintiff asserts the claim, at least in part, on behalf of the estate of a person who was allegedly exposed to asbestos. In those cases, the plaintiff would be required to demonstrate that defendant's asbestos-containing product was present at the decedent's work place, and that the decedent had contact with the product.

4

circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.[4]

## III. Discussion

In support of her contention that Defendant John Crane, Inc., is legally responsible for the decedent's illness and death, Plaintiff relies on the testimony of several former employees of Central Maine Power Company, the decedent's employer, as well as information derived from Defendant John Crane, Inc.'s representatives. For purposes of this motion, Plaintiff has established that: (1) the decedent worked at Central Maine Power Company's Wyman Station, (2) Defendant John Crane, Inc., manufactured or supplied packing and gaskets that were located at the Wyman Station during the time of the decedent's employment, (3) during the time of decedent's employment at the Wyman Station, Defendant John Crane, Inc., manufactured gaskets and packing that contained asbestos, (4) the packing manufactured by Defendant John Crane, Inc., was used "fairly prevalently" at the Wyman Station, and (5) at times during his employment, including during "shut downs," the decedent was in the area of the products, and at times in the presences of the products, under circumstances that could generate dust and particles of asbestos.

To avoid summary judgment, Plaintiff must produce evidence that the decedent had contact with asbestos-containing products manufactured by Defendant John Crane, Inc. As demonstrated above, Plaintiff has produced evidence upon which a fact finder could conclude that Plaintiff was exposed to asbestos dust or particles generated by Defendant John Crane, Inc.'s products. At a minimum, factual issues exist with respect to such a determination. For instance, insofar as Glen Thurston testified that Defendant

---

[4] The Court notes that the causation standard applied by Justice Gorman in *Campbell*, *Boyden*, and *Buck* may not be entirely equivalent with that employed in *Bessey v. Eastern Refractories, Inc.*, SAGSC-CV-99-001, 99-020, 99-035, 99-041, 99-050, and 00-001 (Me. Sup. Ct., Sag. Cty., Feb. 19, 2002) (Bradford, J.), an earlier case in which the Superior Court addressed the issue. While *Bessey* also rejected the *Lohrmann* standard and utilized the "medical causation/product nexus" framework described in 63 AM. JUR. 2D *Products Liability* § 70, *Bessey* arguably imposes a different factual burden to establish causation at the summary judgment stage. Without affirmatively adopting either the "*Bessey* Standard" or the standard articulated by Justice Gorman in *Campbell*, *Boyden*, and *Buck*, the Court will analyze the causation issue in a manner consistent with established causation principles set forth by the Law Court. *See, e.g., Spickler*, 566 A.2d at 1390; *Morse*, 300 A.2d at 495-96.

was one of only two suppliers of packing, and that Defendant's product was fairly prevalent at Wyman Station, the extent to which Defendant's product was present and the likelihood that the decedent had contact with Defendant's product are issues for trial. Accordingly, Plaintiff has produced sufficient evidence to generate an issue for trial.

## IV. Conclusion

Based on the foregoing analysis, the Court denies the Motion for Summary Judgment of Defendant John Crane, Inc.

The entry is:

The Defendant's motion for summary judgment is DENIED.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 4/24/09

_____
Justice, Maine Superior Court

6

LBART TOTTEN ESQ
300 FINANCIAL PL
ROVIDENCE RI 02903

Buyer
Cropscience

Plaintiff

JAMES BEDORTHA ESQ
GOLDBERG PERSLEY AND WHITE
1030 5TH AVENUE     3RD FLOOR

= COURTS
nd County
ox 287
ie 04112-0287

MICHAEL SAUCIER ESQ
PO BOX 4630
PORTLAND ME 04112

WLB
Holding

OURTS
County
'87
4112-0287

JON HADDOW ESQ
PO BOX 738
BANGOR ME 04402

Metropolitan

S

ELIZABETH STOUDER ESQ
PO BOX 9545
PORTLAND ME 04112

Viacom

JRTS
nty

2-0287

Crane Value

JOHN RICH ESQ
PO BOX 426
PORTLAND ME 04112

THEODORE KIRCHNER ESQ
PO BOX 4600
PORTLAND ME 04112

John Crane Inc
Zurn Ind.

JEFFREY EDWARDS ESQ
PO BOX 9546
PORTLAND ME 04112

Gould Pumps

7

MICHAEL PEARCE ESQ
TWO MONUMENT SQUARE
9TH FLOOR
PORTLAND ME 04101

*Gen. Elec.*

RTS
nty

2-0287

GEORGE BURNS ESQ
PO BOX 9729
PORTLAND ME 04104

*Garlock Seal.
Honeywell
Coltce Ind*

STEVEN WRIGHT ESQ
PO BOX 4077
PORTLAND ME 04101

Dt Zurich
Foster Whaler

Gap Co.
IMU Ind.

HRISTOPHER AD HUNT ESQ
CCARTER AND ENGLISH
25 FRANKLIN STREET
OSTON MA 02110

r W Webb

Crane Value

John

I CIRALDO ESQ
OX 9729
LAND ME 04104